748 F.2d 838
 GIRARD BANK, Heritage Bank National Association, Mellon
National Corporation, and Heritage Bancorporation,
Inc., Petitioners,
v.
BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent,
and
The New Jersey Commissioner of Banking, Intervenor.
 No. 84-3262.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 6, 1984.
Decided Nov. 27, 1984.
 
 William R. Norfolk, (argued), H. Rodgin Cohen, Michael Straus, Marcy Engel, Sullivan & Cromwell, New York City, Frank L. Bate, Shanley & Fisher, P.C., Newark, N.J., Martin G. McGuinn, Pittsburgh, Pa., for petitioners.
 J. Virgil Mattingly, Jr. (argued), Richard M. Ashton, Bd. of Governors of the Federal Reserve System, Washington, D.C., for respondent.
 Irwin I. Kimmelman, Dominick A. Mazzagetti, Robert M. Jaworski (argued), Trenton, N.J., for intervenor.
 Before SEITZ, GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Girard Bank ("Girard"), Heritage Bank National Corporation ("Heritage"), Mellon National Corporation ("Mellon"), and Heritage Bancorporation ("Bancorp") petition for review of an order of the Board of Governors of the Federal Reserve System (the "Board"). This court has jurisdiction to review the Board's order pursuant to 12 U.S.C. Sec. 1848.
 
 I.
 
 2
 Heritage is a national bank that has ninety branches in New Jersey and one branch in Pennsylvania. It is owned by Bancorp, a bank holding company principally conducting its operations in New Jersey.
 
 
 3
 Heritage was engaged in interstate branch banking prior to 1927, the effective date of the McFadden Act, 12 U.S.C. Sec. 36. The McFadden Act, as a general matter, confined national banks to intrastate branching. Heritage is one of only two national banks, however, that had branch banks in more than one state prior to the Act, and were permitted to maintain interstate branches under the Act's "grandfather clause."
 
 
 4
 Girard is a Pennsylvania state-chartered bank. It is owned by Mellon, a bank holding company that does not conduct business in New Jersey.
 
 
 5
 Girard, Heritage, Mellon, and Bancorp ("Petitioners") entered into a merger agreement. For present purposes, we may characterize the merger as a two-stage transaction. First, Girard would merge into Heritage, with Heritage as the resulting bank. Girard stock, owned by Mellon, would be converted into and exchanged for newly issued Heritage stock. At the same time, the Heritage stock owned by Bancorp would be cancelled, leaving Heritage as a wholly owned subsidiary of Mellon. Second, Bancorp would be merged into Mellon. The shares of Bancorp would be converted into a right to receive Mellon securities or cash.
 
 
 6
 Because Heritage is a national bank, petitioners filed an application with the Comptroller of the Currency of the United States (the "Comptroller") for approval of the Girard-Heritage merger under the McFadden Act. In addition, the Board requested that the petitioners file an application for approval of the entire two-stage transaction under the Bank Holding Company Act, which regulates the ownership of banks. 12 U.S.C. Secs. 1841-50. Petitioners, reserving an objection to the Board's exercise of jurisdiction, complied with the Board's request. Ultimately, the Comptroller approved the Girard-Heritage merger, but the Board denied approval of the entire two-stage transaction, holding that it was prohibited by the Douglas Amendment to the Bank Holding Company Act, 12 U.S.C. Sec. 1842(d). Only the Board's order denying approval of the two-stage merger agreement is before this court on petition for review.
 
 II.
 
 7
 The Board asserts jurisdiction over this transaction under three separate subsections of the Bank Holding Company Act. 12 U.S.C. Secs. 1842(a)(2), (3) & (5). We need only consider section 1842(a)(3), which states:
 
 
 8
 It shall be unlawful except with prior approval of the Board ... for any bank holding company to acquire direct or indirect ownership or control of any voting shares of any bank if, after such acquisition, such company will directly or indirectly own or control more than 5 per centum of the voting shares of such bank....
 
 
 9
 Since Mellon would acquire 100% of the voting shares of Heritage if this transaction were consummated, the transaction falls squarely within the terms of Sec. 1842(a)(3).
 
 
 10
 Contrary to the unequivocal terms of Sec. 1842(a)(3), petitioners contend forcefully that the Board is without jurisdiction. They make essentially two arguments to support this contention. First, petitioners note that a different jurisdictional provision permits the Board to review transactions in which "any bank holding company or subsidiary thereof, other than a bank, ... acquire[s] all or substantially all of the assets of a bank," and that the emphasized language creates a "bank merger exception" to that provision. 12 U.S.C. Sec. 1842(a)(4) (emphasis added). Petitioners then argue that Congress intended this bank merger exception to prevent "duplicative review" by the Board over all transactions, including this one, that are within the Comptroller's jurisdiction. The necessary implication of this argument is that the bank merger exception in Sec. 1842(a)(4) should be read into Sec. 1842(a)(3). The Board counters that there is no danger of duplicative review in this case since the Comptroller only has jurisdiction over the Girard-Heritage bank merger whereas the Board has jurisdiction over the entire transaction.
 
 
 11
 We need not resolve the question of whether the Board's jurisdiction is duplicative in this case. The Supreme Court of the United States has recognized that the proper exercise of the Board's statutory authority may sometimes duplicate certain functions of the Comptroller. Board of Governors of the Federal Reserve System v. First Lincolnwood Corp., 439 U.S. 234, 250-51, 99 S.Ct. 505, 514-15, 58 L.Ed.2d 484 (1978). Section 1842(a)(4) clearly demonstrates that Congress, when it intends to, knows how to draft an exception which avoids such duplication. Under the general rule of statutory construction that an exception limits only the matter which directly precedes it, we do not read Sec. 1842(a)(3) as if Congress had included an exception for bank mergers in that section as well. 2 Sutherland Statutory Construction Sec. 47.11 (Sands 4th ed. 1973). We do not read Gatliff Coal Co. v. Cox, 142 F.2d 876, 882 (6th Cir.1944) as calling for a contrary result here.
 
 
 12
 Second, petitioners argue, even assuming that Sec. 1842(a)(3) would, as a pure matter of statutory construction, appear to give the Board jurisdiction over transactions of this sort, the Board has consistently disclaimed jurisdiction in analogous situations. Therefore, they conclude, its review should be precluded in this case as well. The Board argues that the cases cited by petitioners are distinguishable and that the Board has never disclaimed the power to review transactions of this kind.
 
 
 13
 Petitioners have provided examples of past transactions that the Board has declined to review, that would have been within the Board's jurisdiction under our interpretation of Sec. 1842(a)(3)'s clear language. Even assuming arguendo, however, that the Board consistently has declined to assert jurisdiction in such situations, that fact is of little assistance in determining the proper scope of the Board's jurisdiction, which is statutory. Petitioners have not cited any judicial precedent which directly recognizes that a particular transaction is within the terms of Sec. 1842(a)(3) and yet holds that the Board may not assert jurisdiction over that transaction. We decline to be the first, and hold that the Board does have jurisdiction over this case.
 
 III.
 
 14
 Having properly asserted jurisdiction under 12 U.S.C. Sec. 1842(a)(3), the Board analyzed the two-stage merger transaction under the Douglas Amendment, 12 U.S.C. Sec. 1842(d). The Douglas Amendment provides:
 
 
 15
 [N]o application ... shall be approved under this section which will permit any bank holding company or any subsidiary thereof to acquire ... any additional bank located outside of the [holding company's home] State ... unless the acquisition of such shares or assets of a State bank by an out-of-State bank holding company is specifically authorized by the statute laws of the State in which such bank is located, by language to that effect and not merely by implication.
 
 
 16
 The Board concluded that Heritage Bank is "located outside of" Pennsylvania, Mellon's home state, and that the transaction is not "specifically authorized" by New Jersey statutory law. Thus, the Board held that the transaction is barred by the Douglas Amendment.
 
 
 17
 Petitioners contend that the Board erred in holding that the Douglas Amendment requires that this transaction be specifically authorized. They argue further that, even if such authorization were required under the Act, it is provided for under New Jersey law. Thus, petitioners conclude, the Douglas Amendment does not prohibit this transaction.
 
 A.) The Douglas Amendment
 
 18
 Petitioners argue that the Douglas Amendment does not require that New Jersey statutory law specifically authorize this transaction. They tacitly concede that Mellon's home state is Pennsylvania, since the statute specifically defines the home state of a bank holding company as "that state in which total deposits of [the bank holding company's] banking subsidiaries are largest." 12 U.S.C. Sec. 1842(d). Petitioners contend, however, that Heritage Bank is not "located outside of" Pennsylvania.
 
 
 19
 The "location" of Heritage may be described in three possible ways. First, it may be "located" only in Pennsylvania. If this is true, Mellon is correct in asserting that Heritage is not "located outside of" Pennsylvania. But Heritage has ninety branches in New Jersey and only a single branch in Pennsylvania. Heritage is chartered in New Jersey, its main office is in New Jersey, and 99 percent of its deposits are in New Jersey. No reasonable construction of the statutory language permits us to hold that Heritage is "located" only in Pennsylvania. Petitioners do not contend otherwise.
 
 
 20
 Second, Heritage may be "located" only in New Jersey. The Board held, and petitioners do not dispute, that if Heritage is located only in New Jersey it obviously is "located outside of" Pennsylvania.
 
 
 21
 And third, Heritage may be "located" both in Pennsylvania and New Jersey. The Board held that, if this were so, Heritage would still be located in New Jersey and would, therefore, necessarily be located outside of Pennsylvania. The Board reasoned that the plain meaning of the statute mandates that a bank with a substantial presence outside of Pennsylvania is "outside of" Pennsylvania. That it might also be located in Pennsylvania would not change this result.
 
 
 22
 The Board also concluded that, since Heritage is located outside of Pennsylvania regardless of whether it is located in New Jersey alone or in both states, there is no need to decide which description is mandated by the Act.
 
 
 23
 Petitioners disagree. They contend that if Heritage is "located in" both states, it is not "located outside of" either state. Thus, they conclude, the Board erred in refusing to decide whether Heritage is located in both states. Moreover, petitioners argue that a correct interpretation of the Act shows that Heritage is located in both Pennsylvania and New Jersey. The Board responds that petitioners seek to amend the Douglas Amendment, which prohibits Mellon from acquiring (without proper approval) a bank "located outside of" Pennsylvania, in order to empower Mellon to acquire any bank "located in" Pennsylvania, even if it is also located in another state.
 
 
 24
 We find the Board's interpretation of the statutory language to be persuasive. This interpretation also provides New Jersey with the control over the ownership of banks within its borders that Congress clearly intended the states to have. See 102 Cong.Rec. S 6860 (daily ed. April 24, 1956) (Remarks of Sen. Douglas). Moreover, while we are free to reverse the Board if it has committed legal error, its interpretation of the Bank Holding Company Act is entitled to deference. Board of Governors of Federal Reserve System v. Investment Company Institute, 450 U.S. 46, 56 n. 21, 101 S.Ct. 973, 982 n. 21, 67 L.Ed.2d 36 (1981) (quoting Board of Governors v. Agnew, 329 U.S. 441, 450, 67 S.Ct. 411, 415, 91 L.Ed. 408 (1947) (Rutledge, J., concurring).
 
 
 25
 Petitioners argue, however, that the Board's holding is inconsistent with Congressional intent. They support this position by citing to legislative history which suggests that the Bank Holding Company Act was intended to prevent the use of bank holding companies to evade the restrictions on branch banking embodied in the McFadden Act. See Id.; H.R.Rep. No. 609, 84th Cong., 1st Sess. (1955). They reason that since the Comptroller has authorized the transaction under the McFadden Act, a proper interpretation of the Bank Holding Act must also authorize the transaction.
 
 
 26
 Although it is true that the Douglas Amendment "is in principle almost identical with the [McFadden Act,] which governs branch banking," it is also true that the Douglas Amendment's language is different than that of the McFadden Act. 102 Cong.Rec. S 6860 (Remarks of Sen. Douglas) (emphasis added). Even assuming, however, that Congress did intend the two Acts to be construed in harmony, petitioners' argument is wide of the mark. We have held that the Board has jurisdiction over this case. It is clear that the Comptroller's decision under the McFadden Act does not bind the Board in its decision under the Bank Holding Company Act. Nor does it bind this court in our review of the Board's decision. We have considered the exhaustive precedent cited by petitioners, including the Comptroller's McFadden Act decision in the Girard-Heritage merger, and we remain persuaded by the Board's reasoning.
 
 
 27
 We hold that Heritage is "located outside of" Pennsylvania within the meaning of the Douglas Amendment. Thus, this transaction may not be consummated unless it has been "specifically authorized by the statute laws of [New Jersey], by language to that effect and not merely by implication." 12 U.S.C. Sec. 1842(d).
 
 B.) New Jersey Statutory Law
 
 28
 The Board adhered in this case to its previous position that, in certain circumstances, an exception to a state-law prohibition against the acquisition of in-state banks by out-of-state bank holding companies would constitute a specific authorization of such acquisitions within the meaning of the Douglas Amendment. The Board determined that this would be true if: (1) the exemption clearly applied to such transactions on its face; (2) there was evidence of clear legislative intent to permit transactions of this sort, "as demonstrated by the use of the state statute in previous cases to permit ... out-of-state bank holding companies to acquire additional institutions in the state;" and (3) the attorney general of the state concludes that out-of-state bank holding companies are not prohibited from acquiring in-state banks. Mellon National Corporation, Federal Reserve System Order Denying Acquisition of a Bank and Merger of Bank Holding Companies at 17-18 (April 24, 1984) (construing NCNB Corporation, 68 Federal Reserve Bulletin 54 (1982)). The Board concluded that these elements were not present in this case and that New Jersey statutory law did not provide specific authorization for this transaction.
 
 N.J.S.A. Sec. 17:9A-345(b) provides:
 
 29
 No company which owns more than 25% of the stock of either a bank located outside of this state or a foreign bank shall own or acquire ownership of more than 5% of the stock of a bank located in this State.
 
 N.J.S.A. Sec. 17:9A-347 provides:
 
 30
 Nothing in this act shall prohibit a company from acquiring bank stock in excess of the limitation imposed by section 2 of this act, if such acquisition results from an exchange of stock resulting from the merger or consolidation of a bank with another bank or banks.
 
 
 31
 (footnotes omitted) (emphasis added).
 
 
 32
 Petitioners argue that Sec. 347 is a specific exception to Sec. 345(b). They argue further that this exception constitutes the requisite specific authorization necessary to satisfy the Douglas Amendment. The Board and the Attorney General of New Jersey disagree. In their view, the language of the statute, read in conjunction with the history of the development of New Jersey banking law, shows that Sec. 347 is not an exception to Sec. 345(b). Even assuming that it is such an exception, however, they argue that it is surely not a specific authorization for petitioners' transaction within the meaning of the Douglas Amendment.
 
 
 33
 Section 347 speaks specifically to "section 2 of this act...." Petitioners argue that "this act" must mean the present act as codified. The difficulty with this argument is that it gives no effect to the language "section 2," because there is no such section restricting bank acquisitions in the present act. To give that language meaning, the Board argues, one must look to the development of New Jersey's Banking Act. Section 2 of the 1957 statute is codified as Sec. 345(a) of the present act, which does not speak to the interstate acquisition of banks. See L.1957, c. 70 pg. 134, Sec. 2. Thus, the Board concludes, the Sec. 347 exemption, also part of the 1957 statute, does not apply to Sec. 345(b), which was passed in 1968 and otherwise prohibits this transaction.
 
 
 34
 Petitioners offer no legislative history to rebut the Board's conclusion. In fact, the legislative history, including the fact that the exception in Sec. 347 was passed eleven years before the specific prohibition found in Sec. 345(b), supports the Board's position. And, as we have said, the Attorney General of New Jersey agrees with the Board's conclusion.
 
 
 35
 Petitioners do not contend that they have satisfied their burden under the three-part test articulated by the Board, and they clearly have not done so. Rather, they argue that if, as they contend, Sec. 347 is an exception to Sec. 345(b) under New Jersey law, it is necessarily sufficient under federal law to constitute a specific authorization within the meaning of the Douglas Amendment.
 
 
 36
 This argument, of course, is at odds with the Board's interpretation of the Act, to which we owe deference. Moreover, we find it unpersuasive. Even assuming, without deciding, that petitioners' interpretation of the exception is correct as a matter of state law, the statutory language is sufficiently ambiguous to preclude holding that this transaction has been "specifically authorized by the statute laws of [New Jersey], by language to that effect and not merely by implication." 12 U.S.C. Sec. 1842(d).
 
 
 37
 We express no opinion as to the merits of the Board's three-part test in the abstract. We hold only that the New Jersey statutory law does not specifically authorize petitioners' two-stage transaction. Thus, the Douglas amendment prohibits its consummation.
 
 
 38
 The order of the Board will be affirmed.