**A-1 CREDIT AND ASSURANCE COMPANY, INC.**

v.

**TRANS UNION CREDIT INFORMATION CO.**

Civ. A. No. 87-763.

United States District Court, E.D. Pennsylvania.

Jan. 19, 1988.

Lee M. Herman, Haddonfield, N.J., for plaintiff.

Mark E. Kogan, Abramson, Cogan, Kogan, Freedman, Thall, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, Senior District Judge.

A-1 Credit and Assurance Company, Inc. (A-1) has brought action against a consumer reporting agency as defined in the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–1681t (1984). By written agreement dated July 22, 1986, A-1 became a subscriber to the consumer reporting services provided by the defendant, Trans Union Credit Information Co. (Trans Union). Under the terms of the agreement, for set fees, A-1 could obtain access to Trans Union's con-

sumer credit reports. The agreement provided, in compliance with restrictions contained in the Fair Credit Reporting Act, that A–1 was in the business of "insurance verification" and that it would use Trans Union's credit reports "in connection with the underwriting of insurance involving the consumer" and for no other purpose. Convinced that A–1 was using the information in connection with a credit repair business and violating the express terms of the written agreement by disclosing the credit reports to the consumers, Trans Union terminated its agreement with A–1 on September 3, 1986. This lawsuit followed.

Plaintiff's complaint seeks damages for tortious interference with A–1's business relationships with A–1's consumer-clients (Count 1); violation of the Fair Credit Reporting Act (Count 2); breach of contract (Count 3); and punitive damages (Count 4). Plaintiff has moved for summary judgment on Counts 2 and 3. Defendant has moved for summary judgment on all counts. Plaintiff's motion will be denied. Defendant's motion will be granted as to all counts except Count 3, breach of contract.

The written agreement between A–1 and Trans Union (Exhibit A to the Complaint) provided that "with just cause, such as delinquency or violation of the terms of the contract or a legal requirement" Trans Union could discontinue serving A–1 and could cancel the agreement "immediately." The agreement further provided that either party could cancel the agreement "at any time upon notice at least 10 days prior to the end of the current monthly payment period."

Shortly after the agreement was executed, A–1 sought to have Trans Union change, delete, or correct certain information contained in Trans Union's consumer credit reports on Curley Millsaps and Teresa Stansbury. From this, Trans Union concluded that A–1 was gaining access to the Trans Union consumer credit reports for the purpose of carrying on a credit repair

business rather than in connection with insurance underwriting. Trans Union also concluded that A–1 must have disclosed the information it obtained to the individual consumers—an express violation of the written agreement.[1]

A credit repair business is a business which, for a fee, will seek to advise consumers of their rights with respect to consumer credit reports and to assist consumers in correcting or deleting information in credit reports that is improper under the Fair Credit Reporting Act. It is undisputed that A–1 did operate a credit repair business for which A–1 charged substantial fees to its clients. Obviously there is tension between credit repair businesses and consumer reporting agencies such that both, in this case, are accusing the other of excesses and improprieties which have nothing directly to do with this case.

It seems quite clear that A–1 was probably utilizing information it received about Millsaps and Stansbury for its credit repair business and did improperly disclose the information it received to the consumers. However, according to an affidavit filed by Pearl Polto, President of A–1, both Millsaps and Stansbury were insurance clients of A–1 during the relevant period. In addition, there is some evidence that the consumers Millsaps and Stansbury may have obtained their credit reports directly from Trans Union, as permitted under the Fair Credit Reporting Act. Thus, a genuine issue of fact arises as to whether A–1 did violate the agreement with Trans Union and whether there was just cause for the immediate cancellation of the agreement. Consequently, genuine issues of fact exist as to whether in terminating the agreement, Trans Union was in breach of the contract. If the affidavit of Pearl Polto proves to be false, Trans Union would not be without remedy.

However, the breach of contract claim for improper termination appears to be much ado about nothing. The contract ex-

**1.** Paragraph 6 of the first page of the agreement states that the subscriber (A–1) agrees

[t]o hold in strict confidence all information received from TUCIC [Trans Union] and not

to disclose such information, under any circumstances, to to the subject of the report, or any other party.

pressly provides that either party may, with or without reason, cancel the agreement upon ten days' notice prior to the end of any monthly billing period. Thus, the only damages could be for the premature cancellation which would be limited to any provable profits that A–1 lost between the date of the cancellation and the ten-day notice period. The lost profits would have to be caused by lost insurance business that A–1 would otherwise have obtained but did not obtain because it could not have access to Trans Union's consumer credit reports. Because such reports can be obtained from other sources, such as the request of the consumer directly to Trans Union, plaintiff's damages, at most, would be minimal.[2] Because the breach of contract claim is a pendent claim, and because plaintiff's damages could not exceed $10,-000.00, it might be appropriate to dismiss this claim, except that: (a) the case was removed by defendant to this court from state court, and (b) to remand this minor contract claim after the case has been decided under this court's local arbitration rule and appealed to this court would be time consuming and wasteful to all interested parties.

■ Plaintiff unsuccessfully argues that because there is implied in every contract a covenant of good faith dealing with the other, Trans Union could not unilaterally terminate the agreement despite the ten days' notice clause. The cases cited by plaintiff are inapplicable. They involve service station franchises, manufacturer's sales representative agreements, financing agreements or cases from other jurisdictions. In all of the cases, the terminated party had expended substantial capital on the basis of a long term contract and could not conveniently obtain replacement services elsewhere. This is quite different from the present case where defendant terminated an agreement to provide the plaintiff, for a fee, its confidential consumer credit reports. The written agreement expressly provided that either party could cancel on ten days' notice. There is no reason to rewrite the agreement, freely entered into by the parties, on some nebulous public policy ground that has not been recognized by the Courts of Pennsylvania.

All that has been written thus far has very little to do with the real dispute between the parties. As plaintiff, A–1, sets forth on the second page (unnumbered) of its brief in support of its motion for summary judgment:

> The central question in this case is whether consumers may delegate their rights under the Act to third parties when obtaining credit records and making disputes concerning the accuracy of information in their credit files.

In substance, plaintiff seeks to establish in this litigation the unqualified right of a credit repair business to obtain from a consumer reporting agency that agency's report on a consumer where the credit repair business has a valid power of attorney from the consumer to obtain the consumer's files. Plaintiff also wants to establish that where it holds a valid power of attorney from a consumer to act on behalf of the consumer in any dispute as to the accuracy of the consumer reporting agency's report on the consumer, the consumer reporting agency must deal directly with the holder of the power of attorney rather than directly with the consumer, as is Trans Union's policy. This involves an issue of both statutory construction and common-law agency.

Under the Fair Credit Reporting Act, certain information is expressly prohibited from being contained in consumer credit reports. *See* 15 U.S.C. § 1681c. The Act provides the consumer with extensive rights and remedies to correct improper information in the consumer's credit reports. *See* 15 U.S.C. §§ 1681g, 1681h, 1681i and 1681n. Credit repair businesses provide assistance to consumers in correcting erroneous or improper consumer credit reports. As a matter of established policy, Trans Union will only deal directly with the consumer. Trans Union refuses to deal

---

**2.** One of the arguments made by A–1 appears to be that a consumer would have to pay a fee of $15 for the consumer's report, whereas, under A–1's agreement with Trans Union, each report could be obtained for a fee of approximately $2.75.

with A–1 as to corrections of consumer credit reports even when A–1 holds a valid power of attorney from the consumer. A–1 contends that this policy violates the Fair Credit Reporting Act and tortiously interferes with A–1's business relationships with its credit repair business clients.

It is difficult to see how Trans Union's failure to deal directly with A–1 tortiously interferes with A–1 and A–1's clients. Trans Union will undeniably provide the reports directly to the consumers and is required to do so under conditions set forth in the Fair Credit Reporting Act. Nothing prevents A–1 and its clients from communicating with each other. Although Trans Union's policy of dealing only with the consumer may make A–1's work more difficult, Trans Union does not interfere, prohibit or inhibit the relationship between A–1 and its customers.

In any event, whether or not Trans Union's refusal to deal with A–1 with regard to correcting consumer credit reports interferes with A–1's business relationships with its clients, such conduct could only constitute a tortious interference if the law required Trans Union to deal directly with A–1. Mere unilateral refusal to deal with another in a business matter is not tortious.

Section 1681b of Title 15 of the United States Code, entitled "Permissible Purposes of Consumers Reports," provides:

A consumer reporting agency *may* furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

(Emphasis added). Plaintiff would have the court torture the clear and unambiguous permissive word "may" to mean "must." Although such judicial legerdemain may not be entirely unknown in the annals of jurisprudential history, at least in this case I will decline the invitation to wave a magic wand with an incantation " 'may'—now you are 'must'."

The Fair Credit Reporting Act contains severe criminal and civil penalties and remedies for violation of its terms. The purpose of the Act was to provide, inter alia, that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." It affirmatively precludes a consumer reporting agency from furnishing a consumer report except (1) upon order of court, or (2) upon written instructions of the consumer, or (3) to a person whom the agency has reason to believe intends to use the information for (a) extending credit, or collecting an account of the consumer; (b) for employment purposes; (c) underwriting insurance involving the consumer; (d) determining the consumer's eligibility for a license or governmental benefit; or (e) other legitimate business need involving the consumer. 15 U.S.C. § 1681b. The Act allows, but does not mandate, that the consumer reporting agency disclose information under the circumstances enumerated in 15 U.S.C. § 1681b.

Plaintiff argues that because the Act provides in section 1681b that the credit reporting agency "may" provide information in response to a court order, the entire section must be interpreted to be "must" because an agency *must* obey a court order. The clause concerning a court order was inserted to protect a credit reporting agency from being confronted with a "catch 22" choice of either violating the statute or being held in contempt of a valid court order. The statute however does not compel disclosure, it merely permits disclosure. The court order would compel that which the statute allows.

I think it is quite clear that Congress did not intend 15 U.S.C. § 1681b to impose any duty upon a consumer reporting agency to disclose information, but merely to permit disclosure under specified limited circumstances. This interpretation appears to conform with the interpretation of the Federal Trade Commission, the agency responsible for governmental enforcement of the Fair Credit Reporting Act. *See* Exhibit J of defendant's brief on its motion for summary judgment. This interpretation is entitled to substantial weight. *Girard Bank v. Board of Governors of the Federal Reserve,* 748 F.2d 838 (3d Cir. 1984).

Because of the limited situations and purposes for which disclosures of credit reports may be made to third parties, Trans Union is certainly entitled to protect itself against claims of improper disclosure by providing reports and only dealing directly with the particular consumer. Otherwise, in each instance, Trans Union would have to verify, at its own risk, the validity of the power of attorney held by A–1 and other similar parties. The consumer is, of course, at liberty to consult with A–1 and make any arrangements it wants with A–1. Trans Union, however, is under no obligation to recognize A–1 as the consumer's agent.

Because Trans Union was under no duty to recognize A–1 as the agent for any consumer, Trans Union incurred no liability to A–1 for refusing to deal directly with A–1 as to A–1's credit repair business clients. Trans Union's policy of only providing reports and information directly to consumers did not in any way interfere with A–1's business relationships with its clients. Consequently, Trans Union did not incur liability under either the Fair Credit Reporting Act or for tortiously interfering with A–1's business relationships with its credit repair business clients.

Summary judgment will be granted in favor of defendant on all claims except plaintiff's breach of contract claim. Breach of contract does not give rise to any claim for punitive damages. Even if plaintiff proves that defendant did not have "just cause" to terminate A–1, plaintiff's damages will be limited to any loss of profits it can prove were caused by its inability to obtain from Trans Union consumer credit reports in connection with plaintiff's business of insurance underwriting and incurred during the ten-day notice period.

### ORDER

It is ordered that plaintiff's motion for summary judgment on Counts 2 and 3 of the complaint is denied. Defendant's motion for summary judgment as to Counts 1, 2, and 4 is granted and denied as to Count 3. Judgment is entered in favor of defendant Trans Union Credit Information Co. and against plaintiff A–1 Credit and Assurance Company, Inc. on Counts 1, 2, and 4.