The **STATE OF TEXAS**, Plaintiff,

v.

Robert L. **CLARKE**, Comptroller of the Currency of the United States; Union National Bank of Laredo, Texas; and Texas Capital Bank–Westwood, N.A., Houston, Texas, Defendants.

Civ. A. No. A–87–CA–860.

United States District Court,
W.D. Texas,
Austin Division.

June 24, 1988.

---

Deborah Herzberg Loomis and Tim N. Sims, Texas Atty. General's Office, Austin, Tex., for plaintiff.

Theodore Hirt and Michael Sitcov, Dept. of Justice, Civ. Div., Washington, D.C., for Robert Clarke.

Francisco Canseco, Laredo, Tex., for Union Nat. Bank of Loredo, Tex.

William Luedke, Houston, Tex., for Texas Capital Bank–Westwood, N.A., Houston, Tex.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, Jr., District Judge.

Motions for summary judgment by Plaintiff and each of the Defendants have been filed. Each side seeks a resolution of whether 12 U.S.C. § 36 allows Texas savings and loans to be defined as "state banks." Allowing such an interpretation of "state bank" would permit national banks to follow statewide savings and loan branching patterns, instead of the current countywide pattern. Texas argues against the interpretation. In the alternative, Texas asks for a declaratory judgment that national banks branching statewide must follow Texas restrictions on state savings

and loans. Because this Court agrees with the Comptroller's definition of "state bank," the Court grants the Comptroller's motion for summary judgment. The Court also finds that no actual controversy exists between the parties, and therefore denies Plaintiff's motion for a declaratory judgment.

### Background

The resolution of this case hinges on the statutory interpretation of the McFadden Act, 12 U.S.C. § 36, which controls the branching ability of national banks. The McFadden Act provides in pertinent part that:

> (c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches ... at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.
>
> \* \* \* \* \* \*
>
> (h) The words "State bank," "State banks," "bank," or "banks," as used in this section, shall be held to include trust companies, savings banks, or other such corporations or institutions carrying on the banking business under the authority of State laws.

12 U.S.C. § 36(c), (h).

As to 12 U.S.C. § 36(c), the Congressional purpose is to allow national bank branching only to the extent that a state permits branch banking for its own banking institutions. *See First National Bank of Logan v. Walker Bank & Trust Co.*, 385 U.S. 252, 259–60, 87 S.Ct. 492, 496–97, 17 L.Ed.2d 343 (1966). (*"Walker Bank"*). By this method, the McFadden Act guarantees competitive equality between national and state banks as to branch banking. *Id.* at 261, 87 S.Ct. at 497. The Supreme Court upheld the policy of competitive equality in *First National Bank v. Dickinson*, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969), (*"Plant City"*) by refusing to allow a national bank to branch beyond parameters set by state laws for state banks.

On December 3, 1987, the Defendant Comptroller approved branching applications by the two Defendant national banks, allowing these national banks to open branches outside their home counties. This action seemingly violated the Texas Constitution, art. 16, § 16, limiting state banks to branching only inside their home county, a limitation the McFadden Act arguably imposes on the Defendant national banks. On December 17, 1987, Texas filed this suit requesting that the Court set aside the Comptroller's decision and enjoin the Defendant banks from establishing new branches. Presently, national banks only branch countywide, following the pattern of commercial state banks as defined by the Texas Constitution, while Texas savings and loans may branch statewide. *See* Tex.Rev.Civ.Stat.Ann., arts. 5, 342–903, 852a § 2.11.

The Texas Constitution, art. 16, § 16 governs Texas commercial banks and provides in pertinent part:

> (a) The Legislature shall by general laws, authorize the incorporation of state banks and savings and loan associations and shall provide for a system of State supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof....
>
> (c) A state bank created by virtue of the power granted by this section, notwithstanding any other provision of this section, has the same rights and privileges that are or may be granted to national banks of the United States domiciled in this State....
>
> (e) The Legislature shall authorize a state bank or national bank of the United States domiciled in this State to establish and operate banking facilities at locations within the county or city of its domicile, subject to limitations the Legislature imposes. The Legislature may permit a bank domi-

ciled within a city located in two or more counties to establish and operate branches within both the city and the county of its domicile, subject to limitations the Legislature imposes.

Texas argues that these provisions clearly set the countywide branching parameters for "state banks," and that since the McFadden Act incorporates state branching law, then national banks should suffer the same branching restrictions. *See Mutschler v. Peoples National Bank*, 607 F.2d 274, 279 (9th Cir.1979). In essence, Texas argues that the Texas Constitution provides the definition of "state bank" as used in 12 U.S.C. § 36(h) and that this definition determines the branching ability of national banks. This Court declines to follow Texas' definition of "state bank" and instead chooses to rely on the Fifth Circuit's definition provided in *Department of Banking & Consumer Finance v. Clarke*, 809 F.2d 266 (5th Cir.1987) (hereinafter *"Deposit Guaranty"*), which in turn followed the reasoning of *Plant City, supra.*

In *Plant City*, the Supreme Court ruled that the terms of the McFadden Act should be determined as a matter of federal law in a manner calculated to further the Congressional goal of competitive equality between state and national banks. *Id.* 396 U.S. at 134, 90 S.Ct. at 343–44. Furtherance of the Congressional goal occurs when the definition rests on a substantive, functional basis and not on formalities suggested by a name, a technicality, or a private contractual arrangement. *Id.* at 136–38, 90 S.Ct. at 344–45. In *Deposit Guaranty*, the Fifth Circuit followed the definitional guidelines provided by the Supreme Court to define the term "state bank."

In a fact situation almost identical to the present one, the Comptroller gave a national bank approval to branch outside the limits that Mississippi allowed its own commercial state banks, but inside the limits Mississippi permitted its state savings associations. *Deposit Guaranty*, 809 F.2d at 267–68. At issue was the appropriate defi-

nition of "state bank." The Circuit Court ruled that "state bank" must be defined "by a targeted functional analysis" and in accordance with federal law. *Id.* at 269–70. The Circuit Court agreed with the Comptroller that the McFadden Act's goal of competitive equality would fail if a state were allowed to block national bank competition by labeling functional state banks by another name, thereby leaving national banks to suffer under tighter restrictions imposed on what the state denominated as "state banks." *Id.* at 270. Under 12 U.S.C. § 36(h), "state banks" are those institutions "carrying on the banking business under the authority of state laws." Relying on the National Bank Act, 12 U.S.C. § 24, the Fifth Circuit found essential banking business consists of receiving deposits, making commercial loans and negotiating checks and drafts. *Id.* at 268. Through a previously compiled administrative record, the Comptroller then demonstrated that Mississippi savings associations were statutorily empowered to perform, and did, in fact, perform these essential banking functions. *Id.* at 270–71. Since the Mississippi savings associations operated as functional banks, they were "state banks" under 12 U.S.C. § 36(c) and the national banks could adopt the statewide branching pattern of the state savings associations. Mississippi also places more limitations on state-chartered banks than on Savings and Loans. *Id.* at 269

### The Present Controversy

Texas argues that *Deposit Guaranty* conflicts with the Supreme Court's holdings in *Plant City* and *Walker Bank*, by disregarding the incorporation of state branching law mandated in § 36(c). This perceived conflict does not actually exist. *Plant City* and *Walker Bank* hold that the McFadden Act requires the Comptroller to adhere to state law limitations on branching when acting on branching applications of national banks.[1] *Plant City*, 396 U.S. at 133, 90 S.Ct. at 343, relying on *Walker Bank*, 385 U.S. at 260, 87 S.Ct. at 496–97.

---

1. Congress has specifically granted the Comptroller the authority to approve branching or relocation applications of national banks when

the application conforms to state law. 12 U.S.C. §§ 30, 36.

*Deposit Guaranty* holds that the term "state bank" will receive a federal functional analysis that is independent of state labels. The Supreme Court and Fifth Circuit decisions mesh smoothly and without contradiction. While federal law defines the federal statutory term "state bank," substantive state branching law still controls where and how a national bank may branch. Assume, *arguendo*, that Texas savings and loan associations qualify as "state banks" under 12 U.S.C. § 36(c) as interpreted by *Deposit Guaranty*. If the Texas Legislature then constitutionally restricted state savings associations to countywide branching, it follows that national banks would be similarly restricted as to branching. Such a hypothetical restriction would be mandated by the McFadden Act as interpreted in *Plant City* and *Walker Bank*.

Since *Deposit Guaranty* stands as good authority, this Court will use *Deposit Guaranty's* definitional approach to determine whether Texas savings and loan associations qualify as "state banks." The *Deposit Guaranty* court approved the Comptroller's functional analysis of "state bank" because emphasis on function over form best furthered the Congressional goal of competitive equality between state and national banks. *Id.* at 270. This functional definitional approach also applies to the present case. The remaining issue is whether the Comptroller demonstrated that Texas savings and loans do, in fact, function as "state banks" by actually carrying on banking business.

In support of his contention that Texas savings and loan associations function as "state banks," the Comptroller offers a copious Administrative Record ("A.R.") detailing savings association business involving receiving deposits, making commercial loans, and negotiating checks and drafts. The Comptroller examined both the legal authority and practice of state-chartered savings and loans in Texas. With respect to Texas law, the Comptroller found that state savings and loans are empowered, *inter alia*, to:

offer negotiable order of withdrawal ("NOW") accounts, (Tex.Rev.Civ.Stat. Ann., art. 852a § 4.01);

offer debit and credit cards (Tex.Rev.Civ. Stat.Ann., art. 852a § 401);

receive and pay interest on deposits, including certificates of deposit (Tex.Rev. Civ.Stat.Ann., art. 852a § 6.01);

lend and invest funds (Tex.Rev.Civ.Stat. Ann., art. 852a § 5.01);

issue letters of credit (Tex.Rev.Civ.Stat. Ann., art. 852a § 5.01).

A.R. 13. Under the "enlargement of powers" statute, Tex.Rev.Civ.Stat.Ann., art. 852a § 5.05, state-chartered savings and loans may engage in any activity in which federally chartered savings and loans can engage, including offering demand deposits to certain businesses, making commercial loans, and making investments in tangible personal property for sale or rental. *Id.* at 13–14; *see* 12 U.S.C. §§ 1464(b)(1), (c)(1)(R), and (c)(2)(A). The Comptroller correctly noted that "these powers, products, and services are essential to the banking business and enable Texas savings and loan associations to provide the same basic products and services that are provided by commercial banks." *Id.* at 14. Importantly, these are essentially the same powers, products and services which formed the basis of the Fifth Circuit's decision in *Deposit Guaranty*—that Mississippi savings associations are "state banks" within the meaning of section 36(d). 809 F.2d at 268.

The Comptroller also presented data from, and analysis of, 280 Texas savings and loans' assets and liability portfolios showing that the savings associations do engage in traditional banking functions in competition with national and state banks. A.R. 13–15, 151–62, 184–85, 343–44. Further evidence in the record shows that Texas savings and loan associations advertise and market services such as checking accounts, NOW accounts, certificates of deposit, consumer loans, and commercial loans. A.R. 59–92, 405–88.

The Comptroller's factual determination that Texas savings and loans conduct banking business must be sustained unless this Court finds that the determina-

tion was arbitrary or capricious, amounting to an abuse of discretion. 5 U.S.C. § 706(2)(A); *Deposit Guaranty*, 809 F.2d at 271, *citing Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). The Court's decision must be based on the evidence offered in the Administrative Record itself. *Deposit Guaranty*, 809 F.2d at 271. In reviewing the Administrative Record, this Court finds that the Comptroller has more than adequately supported his finding that Texas savings and loans carry on banking business and in doing so function as "state banks" under 12 U.S.C. § 36(h).

In response, Texas states that assuming *arguendo*, that Texas savings associations qualify as state banks, then Texas branching law still does not confer statewide branching privileges on national banks. Texas bases this argument on its construction of 12 U.S.C. § 36(c) which allows national bank branching wherever state banks "are at the time authorized ... by the statute law of the state in question by language specifically granting such authority *affirmatively and not merely by implication or recognition*." (emphasis added). The Texas statute authorizing savings and loan branching reads "[a]n association may not without the prior approval of the commissioner, establish an office other than the principal office stated in its articles of incorporation." Tex.Rev.Civ.Stat. Ann., art. 852a § 2.11, (Vernon Supp.1987). Texas argues that this wording only authorizes branching by implication, not by a specific grant of authority. This Court disagrees and finds that the branching statute does contain an affirmative branching grant. In *Deposit Guaranty*, the Mississippi statute allowing Mississippi savings associations branching reads, "[n]o association may establish or operate a branch of-

fice without authorization of the board." Miss.Code Ann. § 81–12–175. The Fifth Circuit interpreted this to mean that a savings association may branch throughout the state. *Deposit Guaranty*, 809 F.2d at 268.

The Fifth Circuit then proceeded with its analysis of the McFadden Act and ruled in the Comptroller's favor. *Id.* at 271. If the Mississippi statute did not specifically grant the branching authority then the court could not have made this ruling; it would have been prohibited from doing so by the Congressional intent as expressed in 12 U.S.C. § 36(c). The *Deposit Guaranty* ruling resulted because the Circuit Court first determined that the Mississippi statute affirmatively granted branching power to Mississippi savings associations. Given the strong similarity between the Texas and Mississippi statutes, this Court finds that Texas savings and loans' branching power is also affirmatively granted, thus allowing national banks, through the McFadden Act, to use the Texas savings association branching pattern.[2]

Texas bases another argument on the wording of 12 U.S.C. § 36(h) which defines a "state bank" as a trust company, a savings bank, or *"other such institutions carrying on the banking business under the authority of State laws."* (emphasis added). Texas argues that savings and loan associations must be excluded from consideration because 12 U.S.C. § 36(h) does not specifically list them. This Court declines to adopt this rigid interpretation of the McFadden Act because such a reading defeats the Congressional purpose by reducing the Act's practical, functional adaptability to change. The entirety of section 36 is "designed to ... build into the federal

---

**2.** *Texas* attempts to distinguish the present case from *Deposit Guaranty* by noting differences between Mississippi and Texas law governing banking and savings associations. Texas argues that such differences mandate a result different from that in *Deposit Guaranty*. Such arguments miss the point entirely. The definition of "state bank" in no way depends on what state law denominates as a state financial institution. Federal law, using the functional definitional approach, controls the determination of "state bank" even in the face of contrary state law.

State law determines the branching options open to national banks, thus furthering competitive equality by allowing the same branching opportunities to state and national banks. Competitive equality cannot be furthered if state laws can also determine the definition of "state bank," especially when evidence indicates that despite a state label or name of an institution the entity is, in fact, functioning as a bank. *See Deposit Guaranty*, 809 F.2d at 269–70; and *Plant City*, 396 U.S. at 131, 90 S.Ct. at 342.

statute a self-executing provision to accommodate changes in state regulation." *Plant City*, 396 U.S. at 133, 90 S.Ct. at 343.

In *Plant City*, the Supreme Court determined the definition of "branch bank," a term used in 12 U.S.C. § 36(f). The Supreme Court found that Congress employed "a calculated indefiniteness with respect to the outer limits of [branch bank]" so that the Comptroller would be able to apply the term to changing circumstances. *See id.* at 135, 90 S.Ct. at 344. This Court finds that section 36(h), defining "state bank," possesses the same calculated indefiniteness the Supreme Court found in section 36(f). The phrase "other such institutions" was not meant to exclude nonenumerated financial institutions, but to include all those conducting banking business pursuant to state laws. This reading furthers a functional, fact-sensitive approach to the term, an approach mandated by governing federal law. *Id.* at 139, 136–37, 90 S.Ct. at 344–45; *Deposit Guaranty*, 809 F.2d at 270.

The definition thus serves to implement the purpose of competitive equality without the necessity of Congress having continually to amend the statute to account for evolution in the financial services industry. As one of the floor sponsors of the original McFadden Act noted, the enactment intended "to extend that equality of opportunity to the future as well as the present...." 67 Cong.Rec. 8267 (1926) (remarks of Sen. Pepper).

 Texas also asks for a declaratory judgment that national banks branching statewide must follow Texas' restrictions on state savings and loan associations. Texas cites *Abbott Laboratories v. Gardner*, 387 U.S. 136, 139, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1969), to support its position that the Administrative Procedure Act ("APA") explicitly sanctions declaratory judgment actions. *Abbott Laboratories* does state that a final agency action, such as the Comptroller's determination of "state bank" in the present case, is review-

able unless Congress, by clear and convincing evidence has foreclosed judicial review. *Id.* at 140–41, 87 S.Ct. at 1510–12. This Court cannot discern any evidence that Congress has foreclosed a judicial review of the Comptroller's action in the present case. Indeed, both sides have filed briefs to aid the Court in its judicial review of the Comptroller's final determination.[3] Declaratory judgments, like injunctions, are simply discretionary remedies that may be granted when a court reviews a final administrative determination. *Id.* at 148, 87 S.Ct. at 1515. Further, the remedy may be granted before a party actually suffers a sanction or injury resulting from the determination. *Id.* at 150–51, 87 S.Ct. at 1516–17.

 A necessary predicate for a declaratory judgment remedy must be the existence of an actual controversy between parties having adverse legal interest. *Id.* at 148, 87 S.Ct. at 1515; *see Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Texas styles itself as a party adverse to the Comptroller on the grounds that the Comptroller's definition of "state bank" will disadvantage Texas commercial banks unless national banks are subject to Texas savings and loan restrictions. Under both the Texas Constitution and the McFadden Act, this disadvantage does not result, hence the parties are not adverse. Article 16, § 16 of the Texas Constitution governs the branching ability of Texas commercial state banks. Section 16(c) reads, "[a] state bank created by virtue of the power granted in this section, *notwithstanding any other provision in this section, has the same rights and privileges that are or may be granted to national banks of the United States domiciled in this State.*" (emphasis added). The other provisions in this section limit commercial Texas banks to countywide branching. A reasonable construction of section 16(c) results in the conclusion that commercial state banks may branch statewide because national banks also may branch Texas-wide. Since both institutions

---

**3.** *Abbott Laboratories* defines a final agency action as including any "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." The Comptroller's definition of "state bank" is such a statement, having future impact which will implement law or policy.

would possess equal branching power, no inequality would result, and without an arguable inequality disfavoring Texas commercial banks no actual controversy exists to support a declaratory judgment remedy.

Even absent this result, the McFadden Act only guarantees competitive equality between state and national banks as to branching. 12 U.S.C. § 36. This Court agrees with the Comptroller that "state bank" includes Texas savings and loan associations which are actually functional banks. The competitive equality guaranteed by the McFadden Act is mandated between national banks and "state banks" not national banks and Texas commercial banks. This Court has found that competitive equality results when statewide branching rights extend to national as well as "state banks." Since both state and national banks receive equal branching privileges, no inequality, and hence no disadvantage is inflicted upon Texas banks. Without tenable allegation of harm or inequality, Texas is without the controversy necessary for declaratory judgment. Accordingly,

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment be and is hereby GRANTED and Plaintiff's Motions for Summary Judgment, Injunction and Declaratory Relief be and are hereby DENIED.