**INDEPENDENT BANKERS ASSOCIA-TION OF AMERICA, Missouri Independent Bankers Association and The Callaway Bank, Plaintiffs,**

**v.**

**Robert L. CLARKE, Comptroller of the Currency of the United States and First National Bank & Trust Company, Columbia, Missouri, Defendants.**

**STATE OF MISSOURI, EX REL., Thomas B. FITZSIMMONS, Commissioner of Finance, Plaintiff,**

**v.**

**Robert L. CLARKE, Comptroller of the Currency of the United States and First National Bank & Trust Company, Columbia, Missouri, Defendants.**

Nos. 89–4027–CV–C–9, 89–4029–CV–C–9.

United States District Court,
W.D. Missouri, C.D.

Nov. 15, 1989.

Michael L. Boicourt, Missouri Atty. Gen.'s Office, Jefferson City, Mo., for plaintiffs.

Frances E. Reddis, U.S. Atty's Office, Kansas City, Mo., for Robert L. Clarke.

Bruce H. Beckett, Smith, Lewis, Beckett & Powell, Columbia, Mo., for First Natl. Bank.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

### I. *Background*

On July 1, 1987, defendant First National Bank & Trust Company (FNB) filed with the Comptroller of the Currency of the United States (Comptroller) an application to establish a domestic branch office in a Jefferson City supermarket. FNB filed a similar application on July 8, 1987, to open a second domestic branch office in a Fulton, Missouri, grocery store. Both proposed branch offices would be located outside FNB's county. The Commissioner of Finance of the State of Missouri, who is charged with execution of the laws related to banks, trust companies and the conduct of banking business in Missouri pursuant to Mo.Rev.Stat. § 361.020, filed comments in opposition to FNB's branch applications on October 28, 1987. On January 26, 1989, the Comptroller approved FNB's applications to establish the two branch offices.

On January 27, 1989, plaintiffs Independent Bankers Association of America (IBAA), Missouri Independent Bankers and The Callaway Bank filed a complaint in this court challenging the Comptroller's action naming as defendants Robert L. Clarke in his capacity as Comptroller and FNB (case No. 89–4027–CV–C–9). Also on January 27, 1989, the State of Missouri filed a complaint in case No. 89–4029–CV–C–5 for declaratory judgment and injunctive relief against Clarke as Comptroller and FNB.

Plaintiffs in both cases assert that the Comptroller's approval of FNB's branch applications was without authority and in violation of § 36(c) of the National Bank (McFadden) Act, 12 U.S.C. § 36. The cases were consolidated for all purposes on February 28, 1989.

Plaintiffs and defendants subsequently filed cross-motions for summary judgment discussing whether 1) FNB should be enjoined from opening the branches at issue; and 2) the Comptroller should be enjoined from using his functional definition of "state bank" in applying 12 U.S.C. § 36(h). A hearing was held on March 23, 1989, on the parties' motions.

On June 30, 1989, 716 F.Supp. 1238, I issued a memorandum opinion upholding the Comptroller's use of a functional definition of "state bank" that includes state savings and loan associations. In addition, I requested additional briefing on whether the Comptroller properly determined that Missouri savings and loan associations are authorized to establish branches within the State of Missouri "by the statute law" of Missouri "by language specifically granting such authority affirmatively and not merely by implication or recognition...."

Section 36(c)(2) of the National Bank Act allows a national bank to establish a branch "at any point within the state in which said association is situated, if such establishment and operation are at the time authorized to state banks by the statute law of the state in question by language specifically granting such authority affirmatively and not merely by implication or recognition...." The Missouri statute governing branching by state savings and loan associations provides in part that "[n]o association may establish or maintain a branch office or agency without the prior written approval of the director of the division of savings and loan supervision...." Mo.Rev.Stat. § 369.329 (Supp.1989).[1]

---

1. No association may establish or maintain a branch office or agency without the prior written approval of the director of the division of savings and loan supervision, except that temporary and incidental agencies may be created for individual transactions and for special temporary purposes without such approval. Each application for approval of the establishment and maintenance of a branch office or one or more agencies shall state the

Plaintiffs argue that the Missouri statute does not *affirmatively* grant state savings and loans the right to branch statewide. The analysis of this issue was limited in the Comptroller's decision, administrative record at 17–18, and in defendants' briefs.

## II. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts.

---

proposed location of the branch office or agency, the functions to be performed at the office or agency, the estimated volume of business at the branch office or agency, the estimated annual expense of the branch office or agency and the mode of payments for the branch officer or agency and such additional matters as the director of the savings and loan supervision by regulation may require. Each such application shall be accompanied by a budget of the association for the current earnings period and for the next succeeding semiannual period, which reflects the estimated additional expense of the maintenance of each such branch office or agency. No branch application shall be granted if, in the opinion of the director or a majority of the members of the commission on appeal, the policies, condition or operation of the applicant afford a basis for supervisory objection to the application. The director of the division of savings and loan supervision may hold a hearing at his discretion on the application in accordance with such procedures as he by regulation may require.
Mo.Rev.Stat. § 369.329.

*Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

█ The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 106 S.Ct. at 2512.

III. *Missouri Savings and Loan Associations Have Been Granted Affirmatively the Right to Branch Statewide*

A. Standard of Review

█ Courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute. *Clarke v. Securities Industry Association,* 479 U.S. 388, 107 S.Ct. 750, 754, 93 L.Ed.2d 757 (1987). "The Comptroller of the Currency is charged with the enforcement of banking laws to an extent that warrants the invocation of this principle with respect to his deliberative conclusions as to the *meaning* of these laws." *Id.* 107 S.Ct. at 759–60 (emphasis added). *See also Department of Banking and Consumer Finance of Mississippi v. Clarke,* 809 F.2d 266, 269 (5th Cir.), *cert. denied* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987) (hereafter *Deposit Guaranty*) ("we are charged to uphold the Comptroller's determination if we find it to be a 'permissible construction' of the National Bank Act."). The Comptroller concluded that the requirement in § 36(c)(2) for a specific, affirmative grant of authority to branch statewide was satisfied by the Missouri law regarding state savings and loan associations. The Comptroller's determination is reasonable because it is consistent with 1) the wording of 12 U.S.C. § 36(c) and Mo.Rev.Stat. § 369.329; 2) the relevant Missouri administrative regulations; 3) the legislative history of § 36(c); 4) the legislative purpose of § 36(c); and 5) federal case law.

B. Statutory Language

Section 36(c)(2) provides that a national bank in Missouri may operate a new branch if Missouri state banks, including savings and loan associations, are authorized "by language specifically granting such authority affirmatively and not merely by implication or recognition...." Plaintiffs argue that Mo.Rev.Stat. § 369.329 does not satisfy this requirement because it is written in negative, not affirmative, language. However, the negative language used in § 369.329 amounts to an affirmative grant of branching authority because of the double negative, i.e., "no association may establish ... without" can be read as "an association may establish ... with."

That such a reading of § 369.329 was intended is supported by the requirements of § 369.329 and what is not required. For instance, the statute places no restrictions on the location of a branch; an applicant is required only to "state the proposed location of the branch office or agency...."

Although the "prior written approval of the director of the division of savings and loan supervision, ..." is required, administrative discretion extends only to consideration of whether "the *policies, condition or operation of the applicant* afford a basis for supervisory objection to the application." (Emphasis added.)

C. Administrative Regulation

The administrative regulation propounded by the Division of Savings and Loan Supervision provides in part:

(2) Branch Office, Mobile Facilities and Tandem Branch.

(A) No association shall establish a branch office, mobile facility or tandem branch without the prior written approval of the director....

(B) Branch Office and Tandem Branch. Information shall be furnished the director on the prescribed form including the information required by section 369.-329, RSMo (1986) and no application to

establish a branch office or tandem branch shall be approved unless the director shall affirmatively find from the evidence before him/her that—

1. All requirements of section 369.329 RSMo (1986) are satisfied;

2. The *policies, condition or operation of the applicant* do not afford a basis for supervisory objection to the application; ...

4 C.S.R. 260.4.010 (1989) (emphasis added).

This regulation carries out the legislative direction in § 369.329 that branching is subject only to supervisory objection based on a consideration of the "policies, condition or operation of the applicant...." The director of the Division of Savings and Loan Supervision by affidavit states that he considers "... whether the establishment of the bank would cause undue competitive pressures...." Whether consideration of "competitive pressures" is encompassed within "policies, condition or operation of the applicant" is not clear. Even if consideration of "competitive pressures" is authorized, the implicit geographical component in "competitive pressures" does not detract from the conclusion that branching has been affirmatively authorized subject only to limited "supervisory objection."

### D. Legislative History of § 36(c)

The requirement in § 36(c) that statewide branching be allowed "by language specifically granting such authority affirmatively and not merely by implication or recognition ..." was intended to prevent national banks from establishing banks against the will of the people. The drafters' primary concern was to restrict branching by national banks to those states where state banks were permitted to branch by a legislative grant of authority.

During floor debate on the Banking Act of 1933, which amended § 36(c) to permit statewide branching, Senator Wheeler stated:

> [T]he point I want to make is this: I do not want the United States Government to permit the establishment of branches in States *where the people by express statute have forbidden it; or where they have not passed upon the matter,* I do not want to permit national banks to go in there and establish branches against the will of the people.... *I wanted a provision to be placed in the statute that branch banks shall not be permitted in a State unless the legislature or the people themselves, through an initiative, actually by law say that they shall be permitted there.*

76 Cong.Rec. 1997 (January 18, 1933) (emphasis added).

Similarly, Senator Glass, a sponsor of the 1933 Banking Act, stated during floor debate that national banks would be permitted to establish banks under the Act "only in those states the laws of which permit branch banking and only to the extent the state laws permit branch banking." 76 Cong.Rec. 2511 (January 25, 1933). *See also* the comments of Senators Copeland [2] and Vandenberg [3] to the effect that the right of national banks to branch depended upon the existence of *affirmative action* by a state permitting branch banking.

Here, because Missouri has affirmatively authorized savings and loans to branch subject only to regulatory approval, Congress' intent that the state authorize branching is satisfied.

### E. Legislative Purpose of § 36(c)

In determining legislative intent, a court must consider not only the language of a statute but also "the object to be accomplished, ... the underlying policies, ... and the consequences of various interpretations." *Kifer v. Liberty Mutual Insur-*

---

**2.** Mr. Copeland: "... [A]s we have amended the bill it permits branch banking only in those States where the State laws permit branch banking by State banks." Mr. Glass: "Only in those States and to the extent that the State laws permit branch banking." Cong.Rec. 2511 (January 25, 1933).

**3.** Mr. Vandenberg: "... [A]s a broad proposition the Bratton amendment prohibits branch banking in a state-wide way ..., except as there be affirmative State action to justify it." 76 Cong.Rec. 2206 (January 21, 1933).

*ance Co.,* 777 F.2d 1325, 1332 (8th Cir. 1985).

The parties agree that the central purpose of the National Bank Act is to ensure competitive equality between state and federal banking systems in the area of branch banking. I previously upheld the Comptroller's finding that Missouri savings and loan associations are engaged in the business of banking and actually compete with national banks in Missouri. Memorandum Opinion at 7–14.

In the period July 1, 1987, to June 1, 1988, there were 51 state chartered savings and loans in Missouri operating. Nineteen Missouri savings and loans have established branches outside their home county. Administrative record at 15; Report of the State of Missouri Department of Economic Development, Division of Savings and Loan Supervision (covering the period July 1, 1987, to June 1, 1988) at 1. Section 36(c)'s purpose of assuring competitive equality between state and federal banking systems in branching can be achieved only by granting national banks the same branching rights that Missouri savings and loans have.

### F. Federal Case Law

Three federal courts have considered state statutes with wording virtually the same as § 369.329 and have upheld decisions of the Comptroller to permit statewide branching by national banks. *Deposit Guaranty,* 809 F.2d 266; *Barnett Bank of South Florida v. Clarke,* 712 F.Supp. 1549 (S.D.Fla.1989); *State of Texas v. Clarke,* 690 F.Supp. 573 (W.D.Tex.1988).

The Florida statute at issue in *Barnett Bank* provided that "[n]o association shall establish or maintain a branch office without the prior written approval of the department [of banking and finance]." Fla. Stat.Ann. § 665.028(1)(c) (West 1984). Like the Missouri statute, the Florida law also required an applicant to provide certain information regarding the functions and financial status of the branch and to specify "[t]he proposed location thereof." *Id.* Noting that the Florida statute "requires the branch application to state the pro-

posed location of the branch, without placing any limitation on permissible locations," the District Court for the Southern District of Florida held that the state "has affirmatively permitted state savings and loan associations to branch statewide by requiring them to specify a proposed branch location in the application without placing any limitation on prospective locations." Slip op. at 13.

In *State of Texas v. Clarke,* the Texas statute provided that "[a]n association may not without the prior approval of the [savings association] commissioner, establish an office other than the principal office stated in its articles of incorporation." Tex.Rev.Civ.Stat.Ann., art. 852a, § 2.11 (Vernon Supp.1987). The district court rejected the argument that this language authorizes branching only by implication and held that "the branching statute does contain an affirmative branching grant." 690 F.Supp. at 578.

In *Deposit Guaranty,* the Fifth Circuit characterized a Mississippi statute that provided in part that "[n]o association may establish or operate a branch office without the authorization of the board ...," Miss. Code.Ann. § 81–12–175, as permitting savings associations to "open branches throughout the state." 809 F.2d at 268.

Plaintiffs rely on *Girard Bank v. Board of Governors of the Federal Reserve System,* 748 F.2d 838 (3rd Cir.1984) to support their argument that § 369.329 does affirmatively authorize statewide branching for savings and loan associations. In *Girard,* the court reviewed an order of the Federal Reserve Board denying approval of a merger under the Douglas Amendment to the Bank Holding Act, 12 U.S.C. § 1842(d). Under this provision, no application for merger would be approved unless "specifically authorized by the statute laws of the state in which such bank is located, by language to that effect and not merely by implication." The court concluded that the state statute in question was "sufficiently ambiguous" to preclude holding that this transaction has been "specifically authorized by the statute laws of [New Jersey] by lanuage to that effect and not merely

by implication." *Id.* at 844. Because the Third Circuit construed statutory language very different from § 369.329, it is not persuasive. Furthermore, in ruling as it did, the court was deferring to the interpretation of what satisfies the Douglas Amendment made by the Board of Governors of the Federal Reserve System "to which we owe deference." *Id.* Here, that same deference produces a contrary result.

### G. Conclusion

For the foregoing reasons and for reasons presented in defendants' supplemental briefs, the Comptroller's determination that relevant Missouri law meets the requirement of § 36(c)(2) for a specific, affirmative grant of authority to state savings and loan associations to branch statewide is not legally wrong and is a reasonable and persuasive interpretation of § 36(c)(2) entitled to deference.

### *Order*

Accordingly, for the reasons stated in this opinion and in the Memorandum Opinion filed on June 30, 1989, it is hereby ORDERED that:

1) defendants' motion for summary judgment is granted;

2) plaintiffs' request that an order issue enjoining the January 26, 1989, decision of the Comptroller of the Currency approving the applications of First National Bank & Trust Company of Columbia, Missouri, to establish two branches, one in Cole County, Missouri, and the other in Callaway County, Missouri, is denied; and

3) these cases are dismissed at plaintiffs' costs.