Michael TAHENY, et al., Plaintiffs,

v.

WELLS FARGO BANK, N.A., et al., Defendants.

No. CIV. S–10–2123 LKK/EFB.

United States District Court, E.D. California.

April 3, 2012.

Matthew Mellen, Mellen Law Firm, San Mateo, CA, Jamil Louis White, Louis/White, Sacramento, CA, for Plaintiffs.

Christopher A. Carr, Yaw–Jiun Gene Wu, Anglin Flewelling Rasmussen Campbell & Trytten, LLP, Pasadena, CA, for Defendants.

### ORDER

LAWRENCE K. KARLTON, Senior District Judge.

## I. SUMMARY

■  This court re-affirms its decision in *Guinto v. Wells Fargo Bank, N.A.,* Civ. S–11–372–LKK, 2011 WL 4738519 (E.D.Cal. October 5, 2011). *Guinto* found that *American Surety Co. v. Bank of California,* 133 F.2d 160, 162 (9th Cir.1943), is binding, Ninth Circuit authority holding that a national bank is a citizen of the state where it has its principal place of business. Under the authority of *American Surety,* Wells Fargo is a citizen of California, and under the authority of *Wachovia Bank v. Schmidt,* 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006), Wells Fargo is a citizen of South Dakota.[1] Since complete diversity is lacking (plaintiffs share Wells Fargo's California citizenship), and there is no other basis for asserting federal juris-

---

1.  The court is aware that after *Schmidt,* district courts within the Ninth Circuit have reached conflicting decisions on Wells Fargo's citizenship.

Some courts have held that a national bank is a citizen exclusively where its main office is located. *Sami v. Wells Fargo Bank,* 2012 WL 967051 at *3 (N.D.Cal.2012) (Mag. J.); *Flores v. Wells Fargo Bank, N.A.,* 2012 WL 832546 (N.D.Cal.2012) (Mag. J.); *Mireles v. Wells Fargo Bank, N.A.,* 845 F.Supp.2d 1034 (C.D.Cal. 2012); *Moreno v. Wells Fargo,* 2011 WL 6372637 (N.D.Cal.2011) (Mag. J.); *Marzette v. Provident Sav. Bank, FSB,* 2011 WL 5513556 (E.D.Cal.2011) (Mendez, J.); *McNeely v. Wells Fargo Bank, N.A.,* 2011 WL 5320997 (C.D.Cal. 2011); *Silva v. Wells Fargo Bank NA,* 2011 WL 2437514 (C.D.Cal.2011); *Tse v. Wells Fargo Bank, N.A.,* 2011 WL 175520 (N.D.Cal.

2011); *California ex rel. Bates v. Mortgage Electronic Registration Systems, Inc.,* 2010 WL 2889061 (E.D.Cal.2010) (Burrell, J.); *De-Leon v. Wells Fargo Bank, N.A.,* 729 F.Supp.2d 1119 (N.D.Cal.2010).

Others, including this court in *Guinto,* have held that the bank is also a citizen of the state of its principal place of business. *Rouse v. Wachovia Mortgage, FSB,* 2012 WL 174206 (C.D.Cal.2012), notice of appeal filed, 11–CV–928 (Dkt. No. 46); *McCrady v. Wells Fargo Bank, N.A.,* 2011 WL 6009966 (C.D.Cal.2011); *Uriarte v. Wells Fargo Bank, N.A.,* 2011 WL 5295285 (S.D.Cal.2011); *Goodman v. Wells Fargo Bank, NA,* 2011 WL 2372044 (C.D.Cal. 2011); *Gutterman v. Wachovia Mortgage,* 2011 WL 2633167 (C.D.Cal.2011); *Saberi v. Wells Fargo Home Mortgage,* 2011 WL 197860 (S.D.Cal.2011).

diction, this case will be remanded to the state court pursuant to 28 U.S.C. § 1447(c), for lack of federal jurisdiction.

## II. BACKGROUND

### A. Defendants Remove This Lawsuit to Federal Court.

On August 5, 2010, defendants Wachovia Mortgage ("a division of Wells Fargo Bank, N.A."), and Golden West Savings Association Service Co. removed this state breach of contract action to federal court. Dkt. No. 1. In this court, plaintiffs ultimately filed a Second Amended Complaint,[2] naming Wells Fargo Bank, N.A. ("Wells Fargo" or "the bank"), and Golden West Savings Association Service Co. as the only defendants.

■ In their Notice of Removal, defendants assert that this court has diversity jurisdiction over this removed action. They say that plaintiffs are citizens of California,[3] and that Wells Fargo is a citizen exclusively of South Dakota, the location of its "main office."[4]

### B. Diversity Jurisdiction and *Guinto.*

This court has an obligation to examine its own subject matter jurisdiction.[5] In *Guinto,* this court dismissed out all the federal claims and thereupon ordered the parties to show cause why the matter should not be remanded back to the state court.

In that case, Wells Fargo argued that it was a citizen of South Dakota, where it maintained its "main office," that it was not a citizen of California (which it has admitted in other proceedings, is its "principal place of business"), and therefore, it argued, it was diverse from the California plaintiffs. The bank's arguments relied upon: 28 U.S.C. § 1348, which states that a national bank is a citizen of the state where it is "located;" *Wachovia Bank v. Schmidt,* 546 U.S. 303, 126 S.Ct. 941, 163

---

**2.** The Second Amended Complaint alleges breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, negligence and violation of the California Business and Professions Code, and it seeks an accounting. There are no federal claims.

**3.** In their state court complaint, plaintiffs allege that their principal dwelling is in El Dorado Hills, California. In this Circuit, that appears to be at least prima facie evidence of California citizenship:

> [A] natural person's state citizenship is ... determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.

*Kanter v. Warner–Lambert Co.,* 265 F.3d 853, 857 (9th Cir.2001).

**4.** According to defendants, Golden West's citizenship does not matter because that entity was fraudulently joined. "Fraudulent joinder" is "a term of art," not an accusation of actual fraud, *see Ritchey v. Upjohn Drug Co.,*

139 F.3d 1313, 1318 (9th Cir.), *cert. denied,* 525 U.S. 963, 119 S.Ct. 407, 142 L.Ed.2d 330 (1998). A defendant may remove a civil action that alleges claims against a non-diverse defendant when the plaintiff has no basis for suing that defendant, or in other words, when that defendant has been fraudulently joined. *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987). Because the court finds that diversity jurisdiction is lacking, based on Wells Fargo's citizenship, it is not necessary for the court to address the fraudulent joinder issue.

**5.** This obligation arises equally in removed cases:

> by whatever route a case arrives in federal court, it is the obligation of both district court and counsel to be alert to jurisdictional requirements. That obligation is equally applicable to cases initially filed in federal court and cases removed from state court to federal court.

*Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 593, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) (some citations omitted).

L.Ed.2d 797 (2006), which held that a national bank is located in the state where it maintains its "main office;" *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 997 (9th Cir.2007), which holds that the national bank in that case was a citizen where it had its main office, citing *Schmidt*; and non-binding cases, some of which interpreted *Schmidt* to mean that a national bank was a citizen of *only* the state where it had its main office, and others which interpreted the case as permitting dual citizenship, namely the bank's home office, and its principal place of business.

Wells Fargo did not cite or make any reference to the binding Ninth Circuit case directly on point, *American Surety*, which held that a national bank is located where it has its principal place of business. Nor did Wells Fargo cite or make reference to any o the subsequent Ninth Circuit cases that have cited *American Surety* as authority on where a national bank is "located." *See Bank of California Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489 (9th Cir.1972) ("The Bank, for diversity purposes, is a 'citizen' of California"), *citing* 28 U.S.C. § 1348 and *American Surety; U.S. Nat. Bank v. Hill*, 434 F.2d 1019, 1020 (9th Cir.1970) (per curiam), *citing American Surety's* interpretation of 28 U.S.C. § 1348.[6]

This court, however—unlike Wells Fargo—is bound by Ninth Circuit precedent. Having concluded that the Supreme Court expressly declined to rule on the issue ruled upon by the Ninth Circuit in *American Surety*—that the bank is located where it has its principal place of business—this court held that for federal diversity jurisdiction purposes, Wells Fargo was a citizen of California, as were plaintiffs, thus destroying diversity jurisdiction. Accordingly, after exercising its discretionary authority to "declin[e] to exercise supplemental jurisdiction over the remaining claims" pursuant to 28 U.S.C. § 1367(c)(3), this court remanded the matter to state court.

### C. Wells Fargo's Response to Guinto.

Wells Fargo did not appeal the *Guinto* decision despite the intra-circuit split it complains about in its brief in this case.[7] It could have done so, since a remand order is appealable when, as in *Guinto*, it is issued pursuant to 28 U.S.C. § 1367(c):

> Here the district court clearly identified 28 U.S.C. § 1367(c) as the source of its authority to remand, and explicitly stated that it was declining to exercise supplemental jurisdiction. In this circuit, "a district court's order remanding pendent state claims on discretionary grounds [is] not pursuant to § 1447(c)," and thus a "district court's discretionary remand of pendent state claims is a reviewable order."

*California Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087, 1091 (9th Cir.2008); *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640–41, 129 S.Ct. 1862, 1867, 173 L.Ed.2d 843 (2009) (the non-appealability rule of Section

---

**6.** Nor did Wells Fargo cite to this court's decision in *Country Nat. Bank v. Mayer*, 788 F.Supp. 1136, 1142 n. 8 (E.D.Cal.1992) (Karlton, J.), which noted that "for diversity jurisdiction, a national bank is a 'citizen' of the state where it has its principal place of business," *citing American Surety*.

**7.** Motion To Confirm Subject Matter Jurisdiction (Dkt. No. 58) at p. 18 [CM/ECF page reference] ("the lower courts should be [hesitant] to create a split of authority on jurisdictional questions"). Wells Fargo also did not seek reconsideration, even though this court relied on binding Ninth Circuit authority that the bank had not addressed in its briefing.

1447(d) does not apply to Section 1367(c) discretionary remands).[8]

### D. Post-*Guinto* Cases.

After *Guinto*, whenever a subsequent case arose before this judge in which *Guinto* appeared to be relevant (the issue was typically identified in status conference), this court has requested briefing on whether the matter should be remanded pursuant to *American Surety* and *Guinto*. See, e.g., *Roberts v. Wells Fargo Bank, N.A.*, 2012 WL 487922 at *1 (E.D.Cal.2012) (finding, as in *Guinto*, that "Wells Fargo is a citizen of California, and there is no basis for diversity jurisdiction");[9] *Pena v. Wells Fargo Bank NA*, Dkt. No. 17, Civ. S–11–1761–LKK–CKD (E.D.Cal. November 14, 2011) (Order To Show Cause pending).

The court in this case requested briefing on whether diversity jurisdiction exists. Wells Fargo again argues to this court, as it did unsuccessfully in *Guinto*, that under *Schmidt*, it is a citizen only of South Dakota—not California—and therefore the court has diversity jurisdiction over this breach of contract claim. Wells Fargo now asserts that this court was mistaken to rely on *American Surety*, and that in any event, it should "be [hesitant] to create a split of authority on jurisdictional questions."[10]

The court does not wish to encourage Wells Fargo or any other party to seek reconsideration through means other than those provided for in the Local Rules of this District. However, in this case, Wells Fargo addresses *American Surety* which

for some reason it did not address on its first go-round. Accordingly, the court will address each of the bank's arguments in turn.

## III. STANDARDS

Civil actions not involving a federal question are removable to a federal district court if there is diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1). Section 1332 requires that there be complete diversity, that is, each plaintiff's citizenship must be diverse as to each defendant's citizenship. *Id.*

■ On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal was proper by a preponderance of evidence. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–404 (9th Cir.1996). Section 1447(c), 28 U.S.C., provides that a case removed from state court "shall be remanded" if it appears that it "lacks subject matter jurisdiction." Federal jurisdiction must be rejected if there is any doubt as to the right of removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992).

## IV. ANALYSIS

Wells Fargo is a "national banking association" otherwise known as a "national bank." For purposes of diversity jurisdiction:

> All national banking associations shall, for the purposes of all other actions by

---

**8.** *See also, Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) ("We agree with the Ninth Circuit and the parties that § 1447(d) interposes no bar to appellate review of the remand order at issue in this case" because the district court's remand order "is not based on lack of subject matter jurisdiction or defects in removal procedure").

**9.** The court notes that Wells Fargo had no opportunity to appeal the remand order in *Roberts*, because that case, unlike *Guinto*, was remanded for lack of federal jurisdiction, and thus review was barred by 28 U.S.C. § 1447(d).

**10.** Plaintiffs did not respond to the court's request for briefing.

or against them, be deemed citizens of the States in which they are respectively located.

28 U.S.C. § 1348.[11] Over the years, the courts have struggled over what "located" means in this context. In general, the courts have split over the following possibilities: (1) where the bank has its "main office;" (2) where the bank has branches; (3) where the bank's "principal place of business" is; and (4) some combination of the prior three. The statute does not, by its express terms at least, specify which of these possibilities is correct. Nor does the statute indicate whether a national bank can have only one location, or whether it can be located in two or more of these possible locations, for diversity purposes.

■ The Supreme Court and the Ninth Circuit have cleared up the mystery to some extent. It is now clear that a national bank is located where it maintains its "main office." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). It is equally clear that a national bank's location is *not* determined by the state(s) where it maintains branches. *Schmidt*, 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797; *American Surety Co. v. Bank of California*, 133 F.2d 160, 162 (9th Cir.1943).

But what of the "principal place of business?" The Ninth, Fifth and Seventh Circuits, and the Comptroller of the Currency ("the administrator charged with supervision of the National Bank Act"), have all determined that a national bank is a citizen of the state where its principal place of business is, even if it is also a citizen of the state where it maintains its home office.[12] According to the Ninth Circuit:

> a logical interpretation of the phraseology of 28 U.S.C. § 41(16) [the predecessor to Section 1348] leads to the conclusion that the "States in which they (national banking associations) are respectively located" are those states in which their principal places of business are maintained.

*American Surety*, 133 F.2d at 162, *aff'g*, *American Surety Co. of New York v. Bank of California*, 44 F.Supp. 81, 83 (D.C.Or. 1941) ("a national bank should be considered as a citizen of the state where it has its principal place of business, irrespective of the fact that it has authorized branches in other states").

The Seventh Circuit, citing *American Surety*, held that: national banks potentially can be citizens of two states for diversity purposes ... a national bank is "located" for purposes of 28 U.S.C. § 1348 in the state where the bank's

---

11. The statute's reference to "all other actions,'" is a reference to an earlier part of the same statute. That earlier provision grants original jurisdiction to the district courts over civil actions commenced by the U.S. against national banks, and several other types of actions involving national banks.

12. In an Interpretive Letter, the Comptroller stated:

> a national bank is a citizen of the state in which its principal place of business is located and ... the state in which its main office is currently located.

OCC Interpretive Letter 952, 2002 WL 32072482 (October 23, 2002). The Ninth Cir-

cuit gives "great weight" to such interpretations by the Comptroller:

> We give "great weight" to any reasonable construction of a regulatory statute adopted by the agency charged with its enforcement. "As the administrator charged with supervision of the National Bank Act, the [OCC] bears primary responsibility for surveillance of 'the business of banking' authorized by § 24 Seventh." ... The OCC's position is reasonable and thus entitled to "great weight."

*Bank of America v. City and County of San Francisco*, 309 F.3d 551, 563 (9th Cir.2002), *cert. denied*, 538 U.S. 1069, 123 S.Ct. 2220, 155 L.Ed.2d 1127 (2003) (citations omitted).

principal place of business is found and the state listed on its organization certificate.

*Firstar Bank, N.A. v. Faul,* 253 F.3d 982, 989 & n. 3 (7th Cir.2001). The Fifth Circuit, also citing *American Surety,* held that a national bank was not located where it had branch offices. Rather, it held:

> We construe section 1348 in light of Congress's intent to maintain jurisdictional parity between national banks on the one hand and state banks and corporations on the other. We hold that the definition of "located" is limited to the national bank's principal place of business and the state listed in its organization certificate and its articles of association.

*Horton v. Bank One, N.A.,* 387 F.3d 426, 436 (5th Cir.2004), *cert. denied,* 546 U.S. 1149, 126 S.Ct. 1164, 163 L.Ed.2d 1127 (2006).

Neither the Supreme Court nor the Ninth Circuit, nor any intervening Congressional enactment has ever held or instructed that a national bank is *not* located in the state of its principal place of business.[13] Indeed, the Supreme Court had the opportunity to address the issue in *Schmidt,* but expressly declined to do so.

First, in considering where national banks are "established," a term used in a different part of Section 1348, the Court states:

> Given the character of the proceedings covered by the first paragraph of

§ 1348, see *supra,* [126 S.Ct.] at 948, one might read "established" as referring to the bank's main office as set forth in its articles of association. Other readings mentioned in Court of Appeals opinions are the bank's *principal place of business* and the place listed in the bank's organization certificate. See *Horton v. Bank One, N.A.,* 387 F.3d 426, 434 (5th Cir.2004); *Firstar Bank, N.A. v. Faul,* 253 F.3d 982, 992 (7th Cir.2001). Because this issue is not presented by the parties or necessary to today's decision, we express no opinion on it. *Cf. ibid.*

*Schmidt,* 546 U.S. at 315 n. 8, 126 S.Ct. 941 (emphasis added). Later, the Court again refers to the bank's principal place of business without ruling on whether that is a proper basis for determining citizenship:

> To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. See *Horton,* 387 F.3d, at 431, and n. 26; *Firstar Bank, N.A.,* 253 F.3d, at 993–994. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however,

---

**13.** And, among the circuits, only the Eighth Circuit has so held. *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC,* 653 F.3d 702 (8th Cir. 2011). The court notes that *WMR* cites *Hicklin Engineering, L.C. v. Bartell,* 439 F.3d 346, 348 (7th Cir.2006), for the proposition that the Seventh Circuit similarly held that a national bank is a citizen "only" of the state housing its main office. But in fact, *Hicklin's* language, similar to the language of *American Surety,* used "only" to exclude branch offices.

It did not read *Schmidt* to exclude principal place of business:

> until *Wachovia Bank v. Schmidt,* 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006), issued six days after this appeal was argued, there was a distinct possibility that national banks would be deemed citizens of every state in which they had offices. But *Wachovia Bank* held that national banks are citizens only of the states in which their main offices are located.

does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.

*Schmidt,* 546 U.S. at 317 n. 9, 126 S.Ct. 941.

### A. Is *American Surety* Irreconcilable with *Schmidt?*

Wells Fargo argues that *American Surety* is irreconcilable with the intervening Supreme Court authority of *Wachovia Bank v. Schmidt,* 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). The bank is correct that "where intervening Supreme Court authority is clearly irreconcilable with ... prior circuit authority, ... a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." *Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

However, Wells Fargo's argument is premised upon its assertion that *"American Surety* and *Schmidt* both held for *single, but different,* standards for citizenship. Using the PBB [principal place of business] test to the exclusion of main office, as *American Surety* had in 1943, is simply irreconcilable with *Schmidt."* Dkt. No. 58 at p. 9 (emphasis in text). The bank's premise is doubly false: (1) *American Surety* did not use the principal place of business test "to the exclusion" of the main office test of *Schmidt;* and (2) *Schmidt* did not use the main office test "to the exclusion" of the principal place of business test of *American Surety, Horton,* and *Firstar Bank.*

Instead, *Schmidt* and *American Surety* each identify a different possibility for citizenship—main office or principal place of business—without excluding the other possibility. Since this is a district court which is bound both by the Ninth Circuit and by the Supreme Court, *Guinto* accepted *both* possibilities for citizenship since they were not in conflict.

It is true that *American Surety* stated: "The trial court was right in holding that defendant is a citizen *only* of the state in which its principal place of business is located, the State of California." *American Surety,* 133 F.2d at 162 (emphasis added). But that "only" does not mean to the exclusion of the state where the bank has its main office—also California.[14] "Only" means to the exclusion of the other state proposed for citizenship in that case, namely Oregon, where the bank had its branch offices.

As this court stated in *Guinto,* and as Wells Fargo asserts here, both *Schmidt* and *American Surety* were faced with the exact same question: is a national bank a citizen of every state where it maintains a branch office? Both cases answered "No." *Schmidt* said national banks are citizens of the state where they maintain their "main office," not everywhere they maintain branch offices. *American Surety* said that Bank of America (a national bank) was a citizen of the state where it had its principal place of business—California—not everywhere it had branch offices, without addressing whether it was also a citizen of

---

**14.** In fact, it would not make sense for *American Surety* to say (or intend) that the bank was located only in California, where it had its principal place of business, but was not located in California, where it had its main office.

the state where it had its "main office" (also California).

This is clear from the district court decision in *American Surety,* which held: "a national bank should be considered as a citizen of the state where it has its principal place of business, *irrespective of the fact that it has authorized branches in other states.*" *American Surety Co. of New York v. Bank of California,* 44 F.Supp. 81, 83 (D.C.Or.1941) (emphasis added). And it is also clear from the Ninth Circuit opinion itself:

> a logical interpretation of the phraseology of 28 U.S.C. § 41(16) [the predecessor to Section 1348] leads to the conclusion that the "States in which they (national banking associations) are respectively located" are those states in which their principal places of business are maintained. If the Congress had intended to provide that a national banking institution should be given the privilege and should carry the duties of citizenship in various states *upon the basis of branch business offices* being established therein, it would be a noteworthy departure from the general rule, and more likely than not Congress would have plainly state[d] such intent.

*American Surety,* 133 F.2d at 162 (emphasis added).

Thus, both the district court and the Ninth Circuit were contrasting the location of the principal place of business against the location of the branch office, and both determined that the principal place of business was the bank's "location" for purposes of diversity jurisdiction. Neither decision excluded the "main office" as the bank's location. In fact, they could not have done so, as the issue never came up, and neither the district court nor the Ninth Circuit ever discussed it.[15]

### B. Should *American Surety* Be Used To "Supplement" *Schmidt?*

Wells Fargo next argues that *American Surety's* "principal place of business" test for national bank citizenship should not be used at all because the case was decided before interstate banking and dual citizenship for corporations "was even possible." Dkt. No. 58 at p. 10.

In support of this argument, Well Fargo offers a history lesson. The bank asserts that interstate banking did not exist before it was authorized by the Riegle–Neal Interstate Banking and Branching Efficiency Act of 1994 ("1994 Interstate Banking Act"), Section 101, 103 Pub.L. 328, 108 Stat. 2338, 2339. But this is plainly false. Clearly, there were banks with interstate operations in 1943, even if there was no full-on interstate banking as it exists today, with national banks permitted to open branches in every state of the union. Most important, the bank in *American Surety*—Bank of America—was one of the

**15.** The court acknowledges that Wells Fargo's interpretation of *American Surety's* use of the word "only," is shared by others. *See, e.g.* *Flores v. Wells Fargo Bank, N.A.,* 2012 WL 832546 at *3 (N.D.Cal.2012) (Mag. J.) (finding that *Schmidt* abrogated *American Surety* because "*American Surety* held that the principal place of business rule is the exclusive test for citizenship of national banks for diversity jurisdiction purposes"); *Firstar Bank, N.A. v. Faul,* 253 F.3d 982, 989 & n. 3 (7th Cir.2001) ("we deviate from *American Surety* ... by concluding that national banks potentially can be citizens of two states for diversity purposes," namely, "a national bank is 'located' for purposes of 28 U.S.C. § 1348 in the state where the bank's principal place of business is found and the state listed on its organization certificate"); OCC Interpretive Letter 952 at pp. 3–4 & p. 4 n. 10 (October 23, 2002) (*American Surety* "took the position that a national bank was located for this purpose only in the state of its principal place of business").

banks with interstate operations.[16]

The Supreme Court is the better source for the history lesson on interstate banking. From *Schmidt* itself it can be seen how it came to pass that Bank of America, the defendant in *American Surety,* was engaged in interstate banking at a time when Wells Fargo thinks such banking did not exist:

> National banks originally lacked authority to operate branch offices.[17] In 1865, Congress enacted an exception permitting a state bank that converted to a national bank to retain its pre-existing branches.[18] Congress authorized limited branch operations in the bank's home State in 1927 and 1933.[19] These Acts, like the 1865 enactment, *allowed interstate branching* only under narrow "grandfather" provisions.[20] Not until 1994 did Congress grant national banks broad authority to establish branch offices across state lines.[21]

*Schmidt,* 546 U.S. at 307 n. 2, 126 S.Ct. 941 (citations converted into footnotes) (emphasis added). Thus, even though broad, full-on interstate banking legislation did not arrive until 1994, the national bank in *American Surety* was engaged in interstate banking.[22]

In any event, the bank then concludes—based upon its belief that interstate banking did not exist in 1943—that at the time *American Surety* was decided, "a national bank's PPB [principal place of business] and main office *had to be* in the same state." Dkt. No. 58 at p. 10 (emphasis added). But this is yet another faulty conclusion, based as it is on the false premise that Bank of America was not engaged in interstate banking. The only support Wells Fargo offers for this latter conclusion is—improbably—*Guinto,* as well as the district court decision in *American Surety.* In fact, neither case supports the bank's conclusion that the main office "had to be" in the same state as the principal place of business.[23]

Wells Fargo also offers no logic for its conclusion, nor does any present itself. The fact is that notwithstanding the absence of the 1994 Interstate Banking Act,

**16.** If it were not, *American Surety* would never have had to determine whether Bank of America was a citizen of California, the location of its main office and principal place of business, or of Oregon, where it maintained branches.

**17.** Act of Feb. 25, 1863, § 11, 12 Stat. 668.

**18.** Act of Mar. 3, 1865, § 7, 13 Stat. 484.

**19.** McFadden Act (Branch Banks), 1927, § 7(c), 44 Stat. 1228; Glass–Steagall Act, 1933, § 23, 48 Stat. 189–190.

**20.** McFadden Act, § 7(a)-(b), 44 Stat. 1228; *see Girard Bank v. Board of Governors of Fed. Reserve System,* 748 F.2d 838, 840 (3rd Cir. 1984) (observing that only two national banks had "grandfathered" interstate branches).

**21.** *See* Riegle–Neal Interstate Banking and Branching Efficiency Act of 1994, § 101, 108 Stat. 2339. *See generally* J. Macey, G. Miller, & R. Carnell, Banking Law and Regulation 18–19, 23, 32–33 (3d ed.2001).

**22.** Wells Fargo highlights the fact that Bank of America had an interstate branch only because it was "grandfathered in," but it does not explain what difference it makes that the interstate banking in *American Surety* came about as the result of the McFadden Act's grandfather clause, rather through the 1994 federal banking legislation. Both were federal banking enactments that permitted the national banks at issue to engage in some form of interstate banking.

**23.** Both cases point out that in the case of *American Surety,* both places *were* in the same state, not that they "had to be." Similarly, the Supreme Court pointed out in *Schmidt* that the bank at issue there—the former Wachovia Bank—also had its main office and principal place of business in the same place. But it was not the case in *Schmidt* either that that situation "had to be."

there was—even in 1943—federal legislation permitting banks organized under state laws to become national banks and to keep their out-of-state branches. Wells Fargo—which has the burden of establishing diversity jurisdiction here—has identified no provision of those laws that required those banks to ensure that their main office and their principal place of business be in the same state.

In any event, from these two faulty, unsupported conclusions, Wells Fargo concludes further that *American Surety's* identification of "principal place of business" as the bank's location was "a distinction without a difference," that this court should ignore. If Wells Fargo is referring to the distinction between "principal place of business" and "main office," its argument is a non-sequitur, because *American Surety* never made that distinction. Rather, it distinguished only between the principal place of business and the branch office location.

### C. Has *American Surety* Been Rendered "Obsolete" in the Age of Interstate Banking?

Wells Fargo next argues that *Schmidt* did not mention *American Surety* because the 1943 Ninth Circuit decision "is no longer relevant on this issue." Dkt. No. 58 at p. 11. The bank concedes that the Supreme Court did not explain its omission of the Ninth Circuit decision when it stated that there was a split among the circuits. But the bank guesses that the Court only bothered to mention the cases that are still relevant, that is, those decided after the 1994 Interstate Banking Act. This court will not guess, as it has no basis for such guesswork.

Certainly, it is interesting that the Supreme Court did not mention *American Surety* in the *Schmidt* Opinion. The fact is, *American Surety* was clearly and unambiguously brought to the attention of the Justices as one of the circuit cases that made up the circuit split on the citizenship of national banks. The Petition in *Schmidt* presents the question thus:

> whether, for purposes of federal diversity jurisdiction, a national banking association is "located" in, and thus deemed to be a citizen of, every state in which the association maintains a branch, as held by the court below, or instead has a more limited citizenship, as *held by three other courts of appeals*.

*Wachovia Bank, Nat. Ass'n v. Schmidt,* Petition for Writ of Certiorari, 2005 WL 544000 (March 4, 2005) (emphasis added). The "three other courts of appeals" set forth in the Petition are the Fifth Circuit (*Horton*, which held citizenship was determined by "principal place of business" *and* "main office,") the Seventh Circuit (*Firstar Bank*, which held the same), and the Ninth Circuit (*American Surety*, which held that citizenship was determined by "principal place of business," but was silent on "main office").[24]

As for *American Surety*, the Petition advised the Justices: "Likewise, construing the immediate predecessor to Section 1348, the Ninth Circuit concluded that a national bank should not be deemed a citizen of every state in which it has a branch." At *6. In setting forth the question it would decide, the Supreme Court stated that it was granting certiorari "to resolve the disagreement among Courts of Appeals on the meaning of § 1348." *Schmidt,* 546 U.S. at 303, 126 S.Ct. 941, citing *Horton, Firstar Bank, Schmidt,* and *World Trade Center Properties, L.L.C. v.*

---

**24.** The case on appeal was *Wachovia Bank v. Schmidt,* 388 F.3d 414 (4th Cir.2004), which had held that a national bank was a citizen of every state where it had branch offices.

*Hartford Fire Ins. Co.*, 345 F.3d 154, 161 (2nd Cir.2003).

### D. Has *American Surety* Been Rendered "Obsolete" Because the Ninth Circuit Has "Ignored" it After *Schmidt?*

Wells Fargo next argues that the Ninth Circuit has not cited *American Surety* post-*Schmidt*, despite two opportunities to do so.

#### 1. *Lowdermilk v. U.S. Bank*

In *Lowdermilk v. U.S. Bank*, 2006 WL 4100011 (D.Or.2006) (unpublished), *aff'd*, 479 F.3d 994 (9th Cir.2007), the district court was called upon to determine whether the "jurisdictional amount" had been properly averred in a removed action under the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. 109-2, 119 Stat. 4 (2005). The district court found that the jurisdictional amount allegation was lacking, and accordingly ordered the case remanded to the state court.

Along the way, however, the district court first considered whether the "minimal diversity" of CAFA had been established. Under CAFA, minimal diversity is met when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C.A. § 1332(d)(2)(A). In its Notice of Removal, defendant, a national bank, "properly alleged that at least one member of the class is a citizen of Oregon." Plaintiff contended that minimal diversity was lacking because defendant U.S. Bank N.A., a national bank, was also a citizen of Oregon, as its principal place of business was there.

The district court held:

Defendant is a national banking association organized and existing under the National Bank Act. A national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). Defendant's Articles of Association designate its main office as being located in Cincinnati, Ohio. Accordingly, defendant has properly alleged that it is a citizen of Ohio. [¶] This court finds that defendant has met its burden of alleging minimal diversity as required under CAFA.

*Lowdermilk,* 2006 WL 4100011 at *2. Thus, although it did not expressly find that defendant was not a citizen of Oregon, where it had its principal place of business, that is the conclusion to be drawn from the court's statement. If the bank were also a citizen of Oregon, then minimal diversity would have been lacking under 28 U.S.C. § 1332(d)(2)(A).

The "minimal diversity" finding—and the district court's implicit rejection of the "principal place of business" test for citizenship—were "not contested on appeal." *Lowdermilk,* 479 F.3d at 997. However, presumably because subject matter jurisdiction was challenged in the district court, the Ninth Circuit addressed the matter anyway, although very briefly:

The questions of minimal diversity and class numerosity are not contested on appeal, and we are satisfied that the evidence supports the district court's decision. With respect to minimal diversity, Defendant is a citizen of Ohio because its main office is located in that state, *Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006), and at least one member of the class is a citizen of Oregon.

*Id.* The Ninth Circuit made no mention of the bank's "principal place of business," or the district court's implicit rejection of that test for citizenship. Most importantly, the Ninth Circuit had no reason to address the issue, because it was "not contested on appeal." Neither the district court nor the

Ninth Circuit in *Lowdermilk* made any mention of *American Surety*, or the fact that prior Ninth Circuit cases had determined that a national bank's citizenship is determined by its "principal place of business." [25]

*Lowdermilk* does not contain a holding on the issue facing this court—whether a national bank is a citizen, not only where it has its main office, but also the state of its principal place of business. This court would not lightly decline to follow the language of a Ninth Circuit decision, even when it was uttered on an issue that was not contested on appeal, and did not have the benefit of briefing. However, in this case: (i) in *Lowdermilk*, there *is* no Ninth Circuit language relating to the "principal place of business" issue, as that language exists only in the unpublished district court order, which was not contested on appeal; and (ii) if the Ninth Circuit intended to give silent approval to the district court's implicit rejection of the principal place of business test, it was both unnecessary to the court's decision, and made in a casual manner not indicative of a binding ruling, especially one that overrules the considered holding of a prior panel.

The mention of "minimal diversity" was completely unnecessary to *Lowdermilk's* decision. Although the Ninth Circuit pre-sumably wanted to assure itself that the district court had subject matter jurisdiction, that is what the entire appeal was about—whether the plaintiffs properly alleged the jurisdictional amount. That was the *only* question presented on appeal,[26] and of course, it was itself jurisdictional. The Ninth Circuit answered the question in the negative, thus finding that there was no subject matter jurisdiction.[27]

In any event, Wells Fargo does not ask this court simply to follow the language of *Lowdermilk*—that a national bank is a citizen where it maintains its main office. This court does follow that language, and it is not disputed here—nor could it be after *Schmidt*—that Wells Fargo is a citizen where it maintains its main office. Wells Fargo instead asks this court to give meaning to what *Lowdermilk* did not say, namely the absence of a reference to *American Surety*. Since the issue addressed in *American Surety* was not contested in the *Lowdermilk* appeal, this court cannot attach significance to this absence.

### 2. *Peralta v. Countrywide.*

Wells Fargo next cites *Peralta v. Countrywide Home Loans, Inc.*, 375 Fed.Appx. 784 (9th Cir.2010) (mem.), an unpublished decision. The bank cites the case not as

---

**25.** *See Bank of California Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489 (9th Cir. 1972), and *U.S. Nat. Bank v. Hill*, 434 F.2d 1019, 1020 (9th Cir.1970) (per curiam), two Ninth Circuit cases that relied on *American Surety*'s determination that a national bank is "located" in the state of its principal place of business, in interpreting 28 U.S.C. § 1348.

**26.** In this case we are called upon to resolve a question of first impression: Under the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. 109–2, 119 Stat. 4 (2005), when the plaintiff has pled damages less than the jurisdictional amount, what must the defendant prove in order to remove the case to federal court? *Lowdermilk*, 479 F.3d at 995–96.

**27.** The court's statement about the "main office" does not appear to qualify as an alternative holding. Since the only question presented was whether the jurisdictional amount had been alleged, the "minimal diversity" question would become relevant *only* if the question on appeal was answered in the affirmative. That is, only if the court found that the jurisdictional amount had been properly alleged would it matter whether minimal diversity existed. In that event, the Ninth Circuit would hardly have relied upon a ruling from the district court that was not presented on appeal, and presumably not briefed on appeal.

precedent, it claims, b only for the fact that the case does not mention *American Surety*. The question posed to the panel was whether defendant, a national bank, was a citizen of California, the state of its principal place of business, in addition to being a citizen of Ohio, where its main office was located. The unpublished decision states:

> The issue involves interpretation of the term "located" in 28 U.S.C. § 1348, consideration of § 1348's extensive legislative history, and analysis of the United States Supreme Court's interpretation of § 1348 in *Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). The court declines to resolve the complex jurisdictional issue of a national bank's citizenship on a limited record, with abbreviated briefing, and a decisional deadline.

*Peralta,* 375 Fed.Appx. at 785.

Wells Fargo somehow interprets this as proof that "the Ninth Circuit no longer considers *American Surety* to be viable." Dkt. No. 58 at p. 12. After all, it argues, if *American Surety* were binding, the court would simply have cited it as precedent and moved on. The fact that the court referred to "the complex jurisdictional issue" is proof, says the bank, that *American Surety* is dead.[28]

The argument is difficult to credit, or even understand. It seems extraordinarily

unlikely that the Ninth Circuit would overrule its prior, considered, binding decision in *American Surety* by simply not mentioning that case in a subsequent, unpublished memorandum decision.[29]

### 3. The Ninth Circuit has not "abandoned" *American Surety.*

Wells Fargo asserts that post-*Schmidt,* the Ninth Circuit has not cited *American Surety.* That appears to be true. But this court again declines the invitation to read the minds of other judges. The court does note however, that the Ninth Circuit has not had an *opportunity* or a need to cite *American Surety* in a published opinion after *Schmidt.*

In any event, Wells Fargo insinuates that once *American Surety* was decided, it was never heard from again. That is not so. the Ninth Circuit has cited *American Surety,* together with the current statute, Section 1348, as authority in determining where a national bank is a citizen.

In *Bank of California Nat. Ass'n v. Twin Harbors Lumber Co.,* 465 F.2d 489 (9th Cir.1972) ("*Twin Harbors*"), the Ninth Circuit said:

> The Bank, for diversity purposes, is a "citizen" of California. 28 U.S.C. § 1348; *American Surety Co. v. Bank of California,* 9 Cir., 1943, 133 F.2d 160.

*Twin Harbors,* 465 F.2d at 492.[30] In *U.S. Nat. Bank v. Hill,* 434 F.2d 1019, 1020 (9th

---

**28.** Wells Fargo's argument also belies its claim that it is not citing *Peralta* as precedent. The court believes it is improper for Wells Fargo to cite *Peralta* for anything other than as relevant to "the doctrine of law of the case or rules of claim preclusion or issue preclusion." 9th Cir. R. 36–3.

**29.** In any event, Wells Fargo's argument is not logical. If the Ninth Circuit panel believed that the jurisdictional issue was "complex," one could just as reasonably conclude that the complexity arises from the fact that it

is *Schmidt* that is not as simple and dispositive on the "principal place of business" issue as Wells Fargo thinks.

**30.** This case indicates that *American Surety* was still good law, at least as late as 1972. However, this court acknowledges some ambiguity in the *Twin Harbors* decision. The determination that the plaintiff national bank was a citizen of California was based upon the allegation that plaintiff had "its principal office in the state of California." *Twin Harbors,* 465 F.2d at 491. So *Twin Harbors*

Cir.1970) (per curiam), a venue case, the Ninth Circuit relied upon *American Surety* to find that a national bank could not be sued in every state where it had branches. In making its decision on venue, the court noted:

> In *American Surety Co. v. Bank of California*, 133 F.2d 160 (9th Cir.1943), our court had the opportunity to define the word "located" as it then appeared in 28 U.S.C. 41(16), the predecessor of 28 U.S.C. § 1348. We held that the national bank involved in that case was "located" only in the state wherein it maintained its principal place of business, even though it had "branch business offices" in other states.

*U.S. Nat. Bank*, 434 F.2d at 1020.[31]

### E. Was *American Surety* Effectively Superseded by Statute in 1994?

Wells Fargo next asserts that 1994 legislation establishes where banks are "located," thus superseding *American Surety*. It correctly points out that *American Surety*, in determining the meaning of "located," stated that "[n]o case defining 'located', *in this connection*, has come to our attention." *American Surety*, 133 F.2d at 161–62 (emphasis added). Wells Fargo then asserts that that problem was fixed in 1994 when Congress defined "home State." Dkt. No. 58 at p. 12.

The argument is a non-sequitur. Congress in 1994 did *not* define the meaning of "located," it defined the meaning of "home State." Congress defined what it meant by "home State" in legislation addressing whether banks can operate branch offices in states other than their "home States." *See* Pub.L. 103–328, 108 Stat. 2349 (1994). And what it meant by "home State" was the state where its "main office" was. It did not state or indicate that the "home State" or the "main office" was where bank was "located" for diversity jurisdiction purposes. Nor did *Schmidt* rely on this definition in finding that a bank was located where it had its main office. *Schmidt*, in a footnote simply recites that fact that "[t]he state in which the main office is located qualifies as the bank's 'home State' under the banking laws." 546 U.S. at 307 n. 1, 126 S.Ct. 941.

It is true that speaking generally, it makes sense to think of bank's "home State" as a place where it is located, but the question here is not a general one. The question is where a bank is "located" for purposes of diversity jurisdiction. Thus, when *American Surety* said Congress had not defined "located" *in this connection*, it was referring to the jurisdictional connection.

Even if Wells Fargo is correct that Congress has now told us where national banks are "located" for purposes of interstate banking regulations, that definition does not carry over to the *jurisdictional*

---

could possibly support the view that the Ninth Circuit interpreted *American Surety* as referring to what is now called the "main office," rather than the principal place of business. However, it could equally mean that the term "principal office" used in *Twin Harbors* was considered interchangeable with "principal place of business." In any event, *Twin Harbors's* citation of *American Surety* dispels Wells Fargo's insinuation that the 1943 case was abandoned by the Ninth Circuit, and or that the Ninth Circuit agrees that it was wrong when decided.

**31.** *Hill* is also problematic however, for another reason. It uses the definition of "located" in the jurisdictional statute to mean the same thing as "located" in the venue statute. However, the Supreme Court has now established that "located" in the venue statute is not the same as "located" in the national bank jurisdiction statute. *Schmidt*, 546 U.S. at 315–16, 126 S.Ct. 941.

definition of "located." The Supreme Court made that very clear in *Schmidt*:

> Finally, the Court of Appeals stressed that in *Citizens & Southern Nat. Bank v. Bougas*, 434 U.S. 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977), this Court interpreted the term "located" in the former venue statute for national banks, see 12 U.S.C. § 94 (1976 ed.), as encompassing any county in which a bank maintains a branch office. 388 F.3d, at 419–420. Reasoning that "the jurisdiction and venue statutes pertain to the same subject matter, namely the amenability of national banking associations to suit in federal court," the panel majority concluded that, "under the in pari materia canon[,] the two statutes should be interpreted" consistently. *Id.,* at 422.

*Wachovia Bank v. Schmidt*, 546 U.S. 303, 313, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). But *Schmidt* expressly rejected the view that "located" for purposes of venue meant "located" for purposes of diversity jurisdiction, even though the statutes used the identical word "located:"

> *Bougas* does not control the meaning of § 1348. In that case, we construed a now-repealed venue provision, which stated that actions against national banking associations could be filed "in any State, county, or municipal court in the county or city in which said association [was] located." 434 U.S., at 35–36, 98 S.Ct. 88 (*quoting* 12 U.S.C. § 94 (1976 ed.)). We held that, for purposes of this provision, a national bank was located, and venue was therefore proper, in any county or city where the bank maintained a branch office. 434 U.S., at 44–45, 98 S.Ct. 88.

Finding that venue and diversity jurisdiction statutes were not in *pari materia,* it rejected the assertion that it therefore had to find that "located" for diversity jurisdiction mean wherever the bank had a branch, precisely what it had found for venue.

The 1994 legislation does not even use the term "located." It cannot be said, therefore, to define the term "located" in the diversity jurisdiction statute.

### F. Was *American Surety* "Simply Wrong?"

Wells Fargo argues that the Ninth Circuit was "simply wrong" in deciding *American Surety*. That argument is not properly made to this court. This court is bound by *American Surety* in the absence of contrary intervening en banc Ninth Circuit, Supreme Court, or federal statutory authority.

### G. Is *American Surety* Not Precedential on Citizenship?

Defendant asserts that the "location" holding of *American Surety* is not binding because it is dicta, " 'made casually and without analysis, uttered in passing without due consideration of the alternatives, *or where it is merely a prelude to another legal issue that commands the panel's full attention . . .* ' " Dkt. No. 58 at p. 17 (emphasis in text), *citing V.S. ex rel. A.O. v. Los Gatos–Saratoga Joint Union H.S. Dist.,* 484 F.3d 1230, 1232 n. 1 (9th Cir. 2007). There is quite a bit wrong with this argument.

First, both the district court and the Ninth Circuit issued reasoned opinions on the meaning of "located" in the diversity jurisdiction statute. The district court engaged in close statutory construction, discussed the statute, its legislative history, other statutes, Supreme Court precedent, cases from other circuits, and other legislation in reaching its conclusion. The Ninth Circuit engaged in its own close reading of the statute, applied Supreme Court precedent to the issue, analyzed Congressional intent, and ultimately found that the dis-

trict court "was right." The holding of *American Surety* is binding precedent, not throw-away dicta.

Second, the jurisdictional holding was not a mere "prelude" to the main action of *American Surety*. It was a determination on federal subject matter jurisdiction, and had to be decided before the merits. Under Wells Fargo's reasoning, every decision that determined jurisdiction before the merits would be dicta, a mere "prelude." That is not so.

### H. Did the 2006 Congress, post-*Schmidt*, "Understand" that "Main Office" Was the Sole Test of Citizenship?

█ Wells Fargo argues that this court should defer to the "understanding" of the 2006 Congress—as Wells Fargo interprets that understanding—in interpreting 28 U.S.C. § 1348, even though that statute was most recently amended in 1948.[32] This court declines the invitation. "[T]he acts of a subsequent legislature tell us nothing definitive about the meaning of laws adopted by an earlier legislature." *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1223 (9th Cir.2012), *quoting Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) ("[S]ubsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress") (internal quotations omitted).

In any event, the legislation Wells Fargo is referring to expressly states that for Federal Savings Associations (not national banks like Wells Fargo), for diversity jurisdiction, the bank is a citizen "only of the State in which such savings association has its home office." 12 U.S.C. § 1464(x). Congress did *not* amend the corresponding statute addressing the citizenship of national banks. This legislation is not relevant to the meaning of "located" in 28 U.S.C. § 1348.

### I. Should the District Court Create a Split of Authority?

Wells Fargo's request that this court avoid a split of authority within the Ninth Circuit comes too late. The district courts in the Ninth Circuit are already split, post-*Schmidt*, on the meaning of Section 1348, and were so long before *Guinto* was decided. However, this court does not have the power to resolve the split. Wells Fargo had the power to bring the split to the attention of the Ninth Circuit by appealing *Guinto*, but it chose not to do so.[33]

## V. CONCLUSION

Wells Fargo has not shown that this court should reverse course from the one it set in *Guinto*. Wells Fargo is a citizen of California as well as a citizen of South Dakota. Since plaintiffs are, at least prima facie, citizens of California, diversity jurisdiction does not exist, and did not exist at the time the matter was removed.

Accordingly, this case is **REMANDED** to the state court for lack of federal jurisdiction.

IT IS SO ORDERED.

---

**32.** *See* Act of June 25, 1948, ch. 646, 62 Stat. 933.

**33.** It appears that Wells Fargo has appealed the Section 1367(c) remand in *Rouse v. Wachovia Mortgage, FSB*, 2012 WL 174206 (C.D.Cal.2012) (*see* Dkt. No. 46, 11–CV–928).